## BANK OF NOVA SCOTIA *v.* UNITED STATES

No. 87–578.   Argued April 27, 1988—Decided June 22, 1988*

---

*Together with No. 87–602, *Kilpatrick et al.* v. *United States,* also on certiorari to the same court.

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, STEVENS, O'CONNOR, and SCALIA, JJ., joined. SCALIA, J., filed a concurring opinion, *post*, p. 264. MARSHALL, J., filed a dissenting opinion, *post*, p. 264.

*James E. Nesland* argued the cause for petitioners in both cases. With him on the briefs for petitioner in No. 87–578 were *William B. Pennell, Henry Harfield, Robert G. Morvillo,* and *Robert J. Anello. William A. Cohan* filed briefs for petitioners in No. 87–602.

*Deputy Solicitor General Bryson* argued the cause for the United States in both cases. With him on the brief were *Solicitor General Fried, Assistant Attorney General Rose,*

*Robert H. Klonoff, Gary R. Allen, Robert E. Lindsay,* and *Alan Hechtkopf.*†

JUSTICE KENNEDY delivered the opinion of the Court.

The issue presented is whether a district court may invoke its supervisory power to dismiss an indictment for prosecutorial misconduct in a grand jury investigation, where the misconduct does not prejudice the defendants.

I

In 1982, after a 20-month investigation conducted before two successive grand juries, eight defendants, including petitioners William A. Kilpatrick, Declan J. O'Donnell, Sheila C. Lerner, and The Bank of Nova Scotia, were indicted on 27 counts. The first 26 counts charged all defendants with conspiracy and some of them with mail and tax fraud. Count 27 charged Kilpatrick with obstruction of justice. The United States District Court for the District of Colorado initially dismissed the first 26 counts for failure to charge a crime, improper pleading, and, as to charges against the bank, for failure to allege that the bank or its agents had the requisite knowledge and criminal intent. Kilpatrick was tried and convicted on the obstruction of justice count.

The Government appealed the dismissal of the first 26 counts. Before oral argument, however, the Court of Appeals granted a defense motion to remand the case to the District Court for a hearing on whether prosecutorial misconduct and irregularities in the grand jury proceedings were additional grounds for dismissal. United States District Judge Fred M. Winner first presided over the post-trial motions and granted a new trial to Kilpatrick on the obstruction of justice count. The cases were later reassigned to United

---

†Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union Foundation et al. by *John A. Powell, Helen Hershkoff, Steven R. Shapiro, Richard F. Ziegler,* and *Martha F. Davis;* and for the National Association of Criminal Defense Lawyers by *Shelley I. Gilman* and *Larry S. Pozner.*

States District Judge John L. Kane, Jr., to complete the post-trial proceedings. After 10 days of hearings, Judge Kane dismissed all 27 counts of the indictment. The District Court held that dismissal was required for various violations of Federal Rule of Criminal Procedure 6. 594 F. Supp. 1324, 1353 (1984). Further, it ruled dismissal was proper under the "totality of the circumstances," including the "numerous violations of Rule 6(d) and (e), Fed. R. Crim. P., violations of 18 U. S. C. §§ 6002 and 6003, violations of the Fifth and Sixth Amendments to the United States Constitution, knowing presentation of misinformation to the grand jury and mistreatment of witnesses." *Ibid.* We shall discuss these findings in more detail below.

The District Court determined that "[a]s a result of the conduct of the prosecutors and their entourage of agents, the indicting grand jury was not able to undertake its essential mission" to act independently of the prosecution. *Ibid.* In an apparent alternative holding, the District Court also ruled that

> "[t]he supervisory authority of the court must be used in circumstances such as those presented in this case to declare with unmistakable intention that such conduct is neither 'silly' nor 'frivolous' and that it will not be tolerated." *Ibid.*

The Government appealed once again, and a divided panel of the Court of Appeals reversed the order of dismissal. 821 F. 2d 1456 (CA10 1987). The Court of Appeals first rejected the District Court's conclusion that the violations of Federal Rule of Criminal Procedure 6 were an independent ground for dismissal of the indictment. It then held that "the totality of conduct before the grand jury did not warrant dismissal of the indictment," *id.*, at 1473, because "the accumulation of misconduct by the Government attorneys did not significantly infringe on the grand jury's ability to exercise independent judgment." *Id.*, at 1474. Without a showing of such an infringement, the court held, the District Court could

not exercise its supervisory authority to dismiss the indictment. *Id.*, at 1474–1475.

The dissenting judge rejected the "view of the majority that prejudice to the defendant must be shown before a court can exercise its supervisory powers to dismiss an indictment on the basis of egregious prosecutorial misconduct." *Id.*, at 1476. In her view, the instances of prosecutorial misconduct relied on by the District Court pervaded the grand jury proceedings, rendering the remedy of dismissal necessary to safeguard the integrity of the judicial process notwithstanding the absence of prejudice to the defendants. *Id.*, at 1479–1480.

We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.

## II

In the exercise of its supervisory authority, a federal court "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States* v. *Hasting*, 461 U. S. 499, 505 (1983). Nevertheless, it is well established that "[e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions." *Thomas* v. *Arn*, 474 U. S. 140, 148 (1985). To allow otherwise "would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *United States* v. *Payner*, 447 U. S. 727, 737 (1980). Our previous cases have not addressed explicitly whether this rationale bars exercise of a supervisory authority where, as here, dismissal of the indictment would conflict with the harmless-error inquiry mandated by the Federal Rules of Criminal Procedure.

We now hold that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). Rule

52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Rule was promulgated pursuant to 18 U. S. C. § 687 (1946 ed.) (currently codified, as amended, at 18 U. S. C. § 3771), which invested us with authority "to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict . . . ." Like its present-day successor, § 687 provided that after a Rule became effective "all laws in conflict therewith shall be of no further force and effect." It follows that Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions. The balance struck by the Rule between societal costs and the rights of the accused may not casually be overlooked "because a court has elected to analyze the question under the supervisory power." *United States* v. *Payner, supra,* at 736.

Our conclusion that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant is supported by other decisions of this Court. In *United States* v. *Mechanik,* 475 U. S. 66 (1986), we held that there is "no reason not to apply [Rule 52(a)] to 'errors, defects, irregularities, or variances' occurring before a grand jury just as we have applied it to such error occurring in the criminal trial itself." *Id.,* at 71–72. In *United States* v. *Hasting,* 461 U. S., at 506, we held that "[s]upervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error." We stated that deterrence is an inappropriate basis for reversal where "means more narrowly tailored to deter objectionable prosecutorial conduct are available." *Ibid.* We also recognized that where the error is harmless, concerns about the "integrity of the [judicial] process" will carry less weight, *ibid.,* and that a

court may not disregard the doctrine of harmless error simply "in order to chastise what the court view[s] as prosecutorial overreaching." *Id.*, at 507. Unlike the present cases, see *infra*, at 258–259, *Hasting* involved constitutional error. It would be inappropriate to devise a rule permitting federal courts to deal more sternly with nonconstitutional harmless errors than with constitutional errors that are likewise harmless.

Having concluded that our customary harmless-error inquiry is applicable where, as in the cases before us, a court is asked to dismiss an indictment prior to the conclusion of the trial, we turn to the standard of prejudice that courts should apply in assessing such claims. We adopt for this purpose, at least where dismissal is sought for nonconstitutional error, the standard articulated by JUSTICE O'CONNOR in her concurring opinion in *United States* v. *Mechanik, supra.* Under this standard, dismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *United States* v. *Mechanik, supra,* at 78. This standard is based on our decision in *Kotteakos* v. *United States,* 328 U. S. 750, 758–759 (1946), where, in construing a statute later incorporated into Rule 52(a), see *United States* v. *Lane,* 474 U. S. 438, 454–455 (1986) (BRENNAN, J., concurring and dissenting), we held that a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had "substantial influence" on the outcome of the proceeding. 328 U. S., at 765.

To be distinguished from the cases before us are a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental. These cases may be explained as isolated exceptions to the harmless-error rule. We think, however, that an alternative and

more clear explanation is that these cases are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice. See *Rose* v. *Clark*, 478 U. S. 570, 577–578 (1986). These cases are exemplified by *Vasquez* v. *Hillery*, 474 U. S. 254, 260–264 (1986), where we held that racial discrimination in selection of grand jurors compelled dismissal of the indictment. In addition to involving an error of constitutional magnitude, other remedies were impractical and it could be presumed that a discriminatorily selected grand jury would treat defendants unfairly. See *United States* v. *Mechanik, supra,* at 70–71, n. 1. We reached a like conclusion in *Ballard* v. *United States,* 329 U. S. 187 (1946), where women had been excluded from the grand jury. The nature of the violation allowed a presumption that the defendant was prejudiced, and any inquiry into harmless error would have required unguided speculation. Such considerations are not presented here, and we review the alleged errors to assess their influence, if any, on the grand jury's decision to indict in the factual context of the cases before us.

### III

Though the standard we have articulated differs from that used by the Court of Appeals, we reach the same conclusion and affirm its decision reversing the order of dismissal. We review the record to set forth the basis of our agreement with the Court of Appeals that prejudice has not been established.

The District Court found that the Government had violated Federal Rule of Criminal Procedure 6(e) by: (1) disclosing grand jury materials to Internal Revenue Service employees having civil tax enforcement responsibilities; (2) failing to give the court prompt notice of such disclosures; (3) disclosing to potential witnesses the names of targets of the investigation; and (4) instructing two grand jury witnesses, who had represented some of the defendants in a separate investiga-

tion of the same tax shelters, that they were not to reveal the substance of their testimony or that they had testified before the grand jury. The court also found that the Government had violated Federal Rule of Criminal Procedure 6(d) in allowing joint appearances by IRS agents before the grand jury for the purpose of reading transcripts to the jurors.

The District Court further concluded that one of the prosecutors improperly argued with an expert witness during a recess of the grand jury after the witness gave testimony adverse to the Government. It also held that the Government had violated the witness immunity statute, 18 U. S. C. §§ 6002, 6003, by the use of "pocket immunity" (immunity granted on representation of the prosecutor rather than by order of a judge), and that the Government caused IRS agents to mischaracterize testimony given in prior proceedings. Furthermore, the District Court found that the Government violated the Fifth Amendment by calling a number of witnesses for the sole purpose of having them assert their privilege against self-incrimination and that it had violated the Sixth Amendment by conducting postindictment interviews of several high-level employees of The Bank of Nova Scotia. Finally, the court concluded that the Government had caused IRS agents to be sworn as agents of the grand jury, thereby elevating their credibility.

As we have noted, no constitutional error occurred during the grand jury proceedings. The Court of Appeals concluded that the District Court's findings of Sixth Amendment postindictment violations were unrelated to the grand jury's independence and decisionmaking process because the alleged violations occurred *after* the indictment. We agree that it was improper for the District Court to cite such matters in dismissing the indictment. The Court of Appeals also found that no Fifth Amendment violation occurred as a result of the Government's calling seven witnesses to testify despite an avowed intention to invoke their Fifth Amendment privilege. We agree that, in the circumstances of these cases,

calling the witnesses was not error. The Government was not required to take at face value the unsworn assertions made by these witnesses outside the grand jury room. Once a witness invoked the privilege on the record, the prosecutors immediately ceased all questioning. Throughout the proceedings, moreover, the prosecution repeated the caution to the grand jury that it was not to draw any adverse inference from a witness' invocation of the Fifth Amendment. App. 109, 130–131, 131–132, 155, 169–170.

In the cases before us we do not inquire whether the grand jury's independence was infringed. Such an infringement may result in grave doubt as to a violation's effect on the grand jury's decision to indict, but we did not grant certiorari to review this conclusion. We note that the Court of Appeals found that the prosecution's conduct was not "a significant infringement on the grand jury's ability to exercise independent judgment," 821 F. 2d, at 1475, and we accept that conclusion here. Finally, we note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment.

We must address, however, whether, despite the grand jury's independence, there was any misconduct by the prosecution that otherwise may have influenced substantially the grand jury's decision to indict, or whether there is grave doubt as to whether the decision to indict was so influenced. Several instances of misconduct found by the District Court—that the prosecutors manipulated the grand jury investigation to gather evidence for use in civil audits; violated the secrecy provisions of Rule 6(e) by publicly identifying the targets and the subject matter of the grand jury investigation; and imposed secrecy obligations in violation of Rule 6(e) upon grand jury witnesses—might be relevant to an allegation of a purpose or intent to abuse the grand jury process. Here, however, it is plain that these alleged breaches could

not have affected the charging decision. We have no occasion to consider them further.

We are left to consider only the District Court's findings that the prosecutors: (1) fashioned and administered unauthorized "oaths" to IRS agents in violation of Rule 6(c); (2) caused the same IRS agents to "summarize" evidence falsely and to assert incorrectly that all the evidence summarized by them had been presented previously to the grand jury; (3) deliberately berated and mistreated an expert witness for the defense in the presence of some grand jurors; (4) abused its authority by providing "pocket immunity" to 23 grand jury witnesses; and (5) permitted IRS agents to appear in tandem to present evidence to the grand jury in violation of Rule 6(d). We consider each in turn.

The Government administered oaths to IRS agents, swearing them in as "agents" of the grand jury. Although the administration of such oaths to IRS agents by the Government was unauthorized, there is ample evidence that the jurors understood that the agents were aligned with the prosecutors. At various times a prosecutor referred to the agents as "my agent(s)," App. 96, 98, 99, 108, 110, 113, 114, 115, 117, 137, 153, 163, 165, 171, 176, and, in discussions with the prosecutors, grand jurors referred to the agents as "your guys" or "your agents." Id., at 117, 157. There is nothing in the record to indicate that the oaths administered to the IRS agents caused their reliability or credibility to be elevated, and the effect, if any, on the grand jury's decision to indict was negligible.

The District Court found that, to the prejudice of petitioners, IRS agents gave misleading and inaccurate summaries to the grand jury just prior to the indictment. Because the record does not reveal any prosecutorial misconduct with respect to these summaries, they provide no ground for dismissing the indictment. The District Court's finding that the summaries offered by IRS agents contained evidence that had not been presented to the grand jury in prior testimony

boils down to a challenge to the reliability or competence of the evidence presented to the grand jury. We have held that an indictment valid on its face is not subject to such a challenge. *United States* v. *Calandra*, 414 U. S. 338, 344–345 (1974). To the extent that a challenge is made to the accuracy of the summaries, the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment. See *Costello* v. *United States*, 350 U. S. 359, 363 (1956) (holding that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient). In light of the record, the finding that the prosecutors knew the evidence to be false or misleading, or that the Government caused the agents to testify falsely, is clearly erroneous. Although the Government may have had doubts about the accuracy of certain aspects of the summaries, this is quite different from having knowledge of falsity.

The District Court found that a prosecutor was abusive to an expert defense witness during a recess and in the hearing of some grand jurors. Although the Government concedes that the treatment of the expert tax witness was improper, the witness himself testified that his testimony was unaffected by this misconduct. The prosecutors instructed the grand jury to disregard anything they may have heard in conversations between a prosecutor and a witness, and explained to the grand jury that such conversations should have no influence on its deliberations. App. 191. In light of these ameliorative measures, there is nothing to indicate that the prosecutor's conduct toward this witness substantially affected the grand jury's evaluation of the testimony or its decision to indict.

The District Court found that the Government granted "pocket immunity" to 23 witnesses during the course of the grand jury proceedings. Without deciding the propriety of granting such immunity to grand jury witnesses, we conclude the conduct did not have a substantial effect on the grand jury's decision to indict, and it does not create grave doubt as

to whether it affected the grand jury's decision. Some prosecutors told the grand jury that immunized witnesses retained their Fifth Amendment privilege and could refuse to testify, while other prosecutors stated that the witnesses had no Fifth Amendment privilege, but we fail to see how this could have had a substantial effect on the jury's assessment of the testimony or its decision to indict. The significant point is that the jurors were made aware that these witnesses had made a deal with the Government.

Assuming the Government had threatened to withdraw immunity from a witness in order to manipulate that witness' testimony, this might have given rise to a finding of prejudice. There is no evidence in the record, however, that would support such a finding. The Government told a witness' attorney that if the witness "testified for Mr. Kilpatrick, all bets were off." The attorney, however, ultimately concluded that the prosecution did not mean to imply that immunity would be withdrawn if his client testified for Kilpatrick, but rather that his client would be validly subject to prosecution for perjury. 594 F. Supp., at 1338. Although the District Court found that the Government's statement was interpreted by the witness to mean that if he testified favorably for Kilpatrick his immunity would be withdrawn, *ibid.*, neither Judge Winner nor Judge Kane made a definitive finding that the Government improperly threatened the witness. The witness may have felt threatened by the prosecutor's statement, but his subjective fear cannot be ascribed to governmental misconduct and was, at most, a consideration bearing on the reliability of his testimony.

Finally, the Government permitted two IRS agents to appear before the grand jury at the same time for the purpose of reading transcripts. Although allowing the agents to read to the grand jury in tandem was a violation of Rule 6(d), it was not prejudicial. The agents gave no testimony of their own during the reading of the transcripts. The grand jury was instructed not to ask any questions and the agents were

instructed not to answer any questions during the readings. There is no evidence that the agents' reading in tandem enhanced the credibility of the testimony or otherwise allowed the agents to exercise undue influence.

In considering the prejudicial effect of the foregoing instances of alleged misconduct, we note that these incidents occurred as isolated episodes in the course of a 20-month investigation, an investigation involving dozens of witnesses and thousands of documents. In view of this context, those violations that did occur do not, even when considered cumulatively, raise a substantial question, much less a grave doubt, as to whether they had a substantial effect on the grand jury's decision to charge.

Errors of the kind alleged in these cases can be remedied adequately by means other than dismissal. For example, a knowing violation of Rule 6 may be punished as a contempt of court. See Fed. Rule Crim. Proc. 6(e)(2). In addition, the court may direct a prosecutor to show cause why he should not be disciplined and request the bar or the Department of Justice to initiate disciplinary proceedings against him. The court may also chastise the prosecutor in a published opinion. Such remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant.

## IV

We conclude that the District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct. The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless. The record will not support the

conclusion that petitioners can meet this standard. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I agree that every United States court has an inherent supervisory authority over the proceedings conducted before it, which assuredly includes the power to decline to proceed on the basis of an indictment obtained in violation of the law. I also agree that we have authority to review lower courts' exercise of this supervisory authority, insofar as it affects the judgments brought before us, though I do not see the basis for any direct authority to supervise lower courts. Cf. *Frazier* v. *Heebe*, 482 U. S. 641, 651–652 (1987) (REHNQUIST, C. J., dissenting). Even less do I see a basis for any court's "supervisory powers to discipline the prosecutors of its jurisdiction," *United States* v. *Hasting*, 461 U. S. 499, 505 (1983), except insofar as concerns their performance before the court and their qualifications to be members of the court's bar.

I join the opinion of the Court because I understand the supervisory power at issue here to be of the first sort.

JUSTICE MARSHALL, dissenting.

I cannot concur in the Court's decision to apply harmless-error analysis to violations of Rule 6 of the Federal Rules of Criminal Procedure. I already have outlined my objections to the Court's approach, which converts "Congress' command regarding the proper conduct of grand jury proceedings to a mere form of words, without practical effect." *United States* v. *Mechanik*, 475 U. S. 66, 84 (1986) (MARSHALL, J., dissenting). Because of the strict protection of the secrecy of grand jury proceedings, instances of prosecutorial misconduct rarely come to light. This is especially true in the pretrial setting, because defendants' chief source of information about grand jury proceedings is governmental disclosures under the Jencks Act, 18 U. S. C. § 3500, which do not

occur until trial is underway. The fact that a prosecutor knows that a Rule 6 violation is unlikely to be discovered gives the Rule little enough bite. To afford the occasional revelation of prosecutorial misconduct the additional insulation of harmless-error analysis leaves Rule 6 toothless. Moreover, as I argued in *Mechanik,* in this context "[a]ny case-by-case analysis to determine whether the defendant was actually prejudiced is simply too speculative to afford defendants meaningful protection, and imposes a difficult burden on the courts that outweighs the benefits to be derived." 475 U. S., at 86. Given the nature of grand jury proceedings, Rule 6 violations can be deterred and redressed effectively only by a *per se* rule of dismissal. Today's decision reduces Rule 6 to little more than a code of honor that prosecutors can violate with virtual impunity. I respectfully dissent.