**UNITED STATES of America**

v.

**Anthony L. OLVIS and Angela D. Palmer, Defendants.**

**Criminal A. No. 4:95cr38.**

United States District Court,
E.D. Virginia.
Newport News Division.

Dec. 21, 1995.

452

James Stephen Ellenson, Newport News, VA, for Anthony L. Olvis.

Sterling Harrisbe Weaver, Sr., Portsmouth, VA, for Angela D. Palmer.

Robert Edward Bradenham, II, United States Attorney's Office, Norfolk, VA, for U.S.

*MEMORANDUM ORDER AND OPINION*

JACKSON, District Judge.

**INTRODUCTION**

This matter comes before the Court on the motions of Defendants Olvis and Palmer to dismiss the indictments based on a claim of selective prosecution. Defendant Anthony L. Olvis is charged with conspiracy to distribute cocaine base and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) (1988), respectively, and use of a firearm during and in relation to a drug trafficking crime and money laundering in violation of 18 U.S.C. §§ 924(c), 1956(a)(1)(B)(I) (1994), respectively. Defendant Angela D. Palmer is charged with conspiracy to distribute cocaine base in violation

of 21 U.S.C. § 846 (1988), and money laundering, perjury, and obstruction of justice in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1623, 1503 (1994), respectively.

After holding a hearing on December 4, 1995, the Court issued an order on December 5, 1995, finding that Defendants had made a nonfrivolous showing, which made discovery and an evidentiary hearing appropriate. Defendants propounded interrogatories and requests for production to the United States Attorney on December 7, 1995. On December 12, 1995, the United States Attorney filed the Government's Consolidated Answer in Opposition to Discovery Requests, Request for Production and Interrogatories. The United States Attorney declined to answer all of the interrogatories and declined to produce any of the requested documents, files, or records. The United States Attorney provided several reasons for its refusal to provide the requested information; however, few of the specifically enumerated reasons dealt with the requests themselves, but rather the propriety of the Court's order of December 5, 1995, which ordered discovery.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On November 3, 1995, late in the afternoon, defense counsel for Defendant Olvis received from the United States various materials, including transcripts of the proceedings of the grand jury, in accordance with the Jencks Act, 18 U.S.C. § 3500 (1994). After examining approximately twenty-nine transcripts of grand jury witnesses, defense counsel raised several oral motions on November 6, 1995, prior to the impaneling of the jury, including a motion for dismissal of the indictment on the grounds of selective prosecution. Defendant Palmer, by her attorney, joined in these oral motions. The Court ordered Defendants to memorialize these motions in writing and they did so on November 9, 1995. The United States filed a written response to the motions on November 16, 1995.

Defendants in two related cases involving conspiracies to distribute cocaine base, commonly known as "crack," also filed motions to dismiss the indictments for selective prosecu-

tion.[1] These defendants filed their motions based on "information and belief" because they had not reviewed the transcripts of the witnesses before the grand jury which the United States Attorney will provide to them pursuant to the Jencks Act. In an order filed November 21, 1995, the Court attempted to address the motions filed in each of the three cases at one time; however, the United States Attorney asserted its right to not release the materials pursuant to the Jencks Act prior to seventy-hours before each of the other two scheduled trials. With the United States Attorney having refused to cooperate with the Court's effort to consolidate the motions, the Court could only hear argument on the motions of Defendants Olvis and Palmer who had examined Jencks material.

At the hearing on December 4, 1995, Defendants argued that others similarly situated generally were not indicted. Defendant Palmer was indicted for her involvement in laundering the proceeds of the conspiracy through the purchase of automobiles. She was also charged with perjury and obstruction of justice.[2] The indictment charges that two automobiles, purchased with some of the proceeds of the conspiracy, were registered in Palmer's name. By many standards, she was a peripheral player in the scheme. In contrast, one of the Caucasian individuals to whom the Government granted immunity drove for one of the principals and testified that she could be considered as working for him. Others who were not indicted, Defendants charge, were selling drugs.

Defendant Olvis' involvement as alleged, however, is more extensive; the indictment names him in almost all of the "overt acts." Although Defendant Olvis is the principal as charged in the indictment, Defendants essentially allege that at least one Caucasian individual whom the United States did not present for indictment was involved in selling cocaine base and the violent acts associated with the sale of cocaine base.

The United States argued that the Caucasian conspirators who were not indicted were not similarly situated to Defendants. Regarding the immunized Caucasian who, according to Defendants, testified before the grand jury that he sold crack for each of the principals in the three related conspiracies and was involved in two "drive-by" shootings, the agent from the task force testified that the investigative team did not know of this individual's significant involvement in the conspiracy at the time the Government approached him with the prospect of immunity. He was approached, testified the agent, because he was observed purchasing $80 worth of crack. The Government, this witness testified, only became aware of his involvement after he agreed to cooperate. In answering the Court's inquiry concerning how the United States Attorney made the decisions about whom to present to the grand jury for indictment, the United States Attorney offered several criteria, including culpability, willingness to cooperate, and being a dealer versus a user. The agent from the task force testified that one of the task force's primary concerns was eliminating some of the violence associated with drug traffic.

The Court found that all the individuals discussed in this motion are, in the first instance, similarly situated in that they were all involved in the conspiracy. The Court did not find that the United States Attorney consistently used the proffered criteria in deciding whom to present for indictment and to whom the Government would grant immunity. The Court further found the Government's explanation unpersuasive, including the reason given for why an African–American individual whose overt act was to have two automobiles registered in her name was indicted and a Caucasian individual who sold drugs and was involved in two drive-by shootings was not indicted. Moreover, the Court deemed it necessary to compare the group of Defendants, all African–American, as a whole to the Caucasians who were not indicted although the United States had evi-

---

**1.** These cases are *United States v. Terry D. Jones, et al.,* Criminal Action No. 4:95cr37, and *United States v. Marty L. Wright, et al.,* Criminal Action Nos. 4:95cr39, 4:95cr44.

**2.** There remains the triable issue of whether Palmer actually perjured herself or obstructed justice because she was allegedly not allowed to complete or expound upon some of her answers to questions before the grand jury. (Tr. Guilty Plea at 46–49.)

dence of their criminal activity. The disparity in treatment of certain individuals with similar involvement calls into question the legitimacy of the entire prosecution, and the United States Attorney's explanation did not dispel the Court's concerns which these motions have raised.

To make a showing on the second prong, discriminatory intent, counsel for Defendant Palmer conducted a review of cases involving crack or cocaine base[3] in the Newport News and Norfolk divisions of the Eastern District of Virginia. His review produced the following numbers:

| | NEWPORT NEWS | NORFOLK | DIVISIONS COMBINED |
|---|---|---|---|
| DEFENDANTS | 61 | 250 | 311 |
| # FOR WHICH RACE WAS DETERMINED | 58 | 233 | 291 |
| # OF AFRICAN-AMERICANS | 49 | 219 | 268 |
| # OF CAUCASIANS | 7 | 7 | 14 |
| # OF LATINOS | 0 | 6 | 6 |
| # OF ASIANS | 2 | 0 | 2 |
| # OF JAMAICANS | 0 | 1 | 1 |
| % OF AFRICAN-AMERICANS OF TOTAL | 80% | 88% | 84% |
| % OF AFRICAN-AMERICANS OF DEFENDANTS FOR WHICH RACE WAS DETERMINED | 84% | 94% | 92%[4] |

The United States adduced testimony from an Assistant United States Attorney ("AUSA")[5] who had prosecuted approximately thirty defendants in approximately seven cases. This witness testified that race was not a factor in his charging decisions. Of those thirty defendants, approximately twelve defendants were African-American, twelve were Caucasian, and six were Latino or Asian. The Court noted that this testimony is consistent with the data offered by counsel for Defendant Palmer. The United States Attorney also offered the testimony of an agent from the Colonial Task Force. The Task Force includes law enforcement officers from local and state authorities as well as the Federal Bureau of Investigation. This testimony was apparently offered to explain, at least partially, the charging decisions of the United States Attorney.[6] The agent testified

3. He reviewed only the cases which had crack or cocaine base appearing on the docket sheet.

4. These numbers reflect the Court's review of Defendant Palmer's written submission, filed December 14, 1995. The figures used in the Court's order of December 5, 1995 were based upon counsel's oral representations at the hearing on December 4, 1995.

5. Assistant United States Attorney Kevin Comstock, who testified in this regard, is not one of the Assistant United States Attorneys working on the three related cases involving the conspiracy to distribute crack.

6. The Court noted that although the three Assistant United States Attorneys involved in the three related cases were present during the hearing, the United States Attorney did not offer any of them as witnesses to explain their charging decisions. The agent, who testified, like all law enforcement officials, of course does not have the authority to make these decisions.

that these indictments were the first cases the Task Force had referred to the federal system for prosecution. All of the alleged conspirators in these cases are African–Americans. Of the cases brought in state court involving crack or cocaine base, the agent testified, African–Americans and Caucasians are prosecuted in approximately equal numbers. The United States Attorney also supplemented its written response to Defendants' motion with affidavits by the prosecuting attorneys stating that the decisions about whom should be indicted was based solely on the evidence and not on the race of individuals.

The Court held in its order of December 5, 1995 that Defendants had made a nonfrivolous showing of the elements of a claim of selective prosecution. In making this determination, the Court considered the comparisons offered by Defendants between their involvement and the involvement of Caucasians individuals to whom the Government offered immunity. The Court also considered the statistical data offered by Defendant Palmer which revealed that the overwhelming majority of defendants in cases involving the distribution of cocaine base in the divisions of Newport News and Norfolk were African–Americans. Finally, the Court weighed the explanation offered by the United States through oral argument and the testimony of an AUSA and a member of the Colonial Task Force. The Court found, however, that the Government's explanation did not sufficiently rebut, if at all, Defendants' showing, which the Court held to be nonfrivolous. Thus the Court ordered discovery and confirmed the scheduled evidentiary hearing set for December 20, 1995.

Defendants filed their requests for discovery on December 7, 1995. On December 12, 1995, the United States refused to answer the discovery, citing its opposition to the Court's finding that Defendants' motions were nonfrivolous. On December 20, 1995, the Court held the scheduled evidentiary hearing. However, in view of the United States Attorney's refusal to answer discovery, Defendants were not prepared to present any new evidence. The United States Attorney persisted in its refusal to obey the

Court's order to provide discovery for the reasons stated in its response. The United States did supplement its written response with two affidavits from Assistant United States Attorneys. In these affidavits the United States Attorney again deny that considerations of race have played a role in any decisions the office has made to prosecute any defendants. The affidavits also indicate that the United States Attorney does not have information to identify the race of defendants. These affidavits were provided to counsel for Defendants on the morning of the hearing. Having not received any of the information or documents which they requested through discovery because of the United States Attorney's refusal to obey the Court's order of December 5, 1995, Defendants made a motion to dismiss the indictments.

Upon review of the interrogatories and requests for production filed by Defendants, Court finds that the requests for discovery were reasonably calculated to produce information to allow Defendants to attempt to prove their claim of selective prosecution. Very few requests were too broad, unreasonable, or created risk of injury to any person. The Court could have narrowed the few arguably overbroad requests upon a timely motion from the United States Attorney. Yet the United States Attorney made no such motion and merely refused to comply. Thus, the Court now considers Defendants' motion to dismiss.

## II. DISCUSSION

■ The Court finds the United States Attorney's response to the motion to dismiss for selective prosecution disingenuous and inconsistent. The United States Attorney's Answer to requests for discovery presented two general reasons for its refusal to provide any of the requested information. First, the United States Attorney argued that "the materials and information sought represent an oppressive, overly broad and unwarranted intrusion into the discretionary decisions, judgments, and work product of the United States Attorney's Office." (Ans. at 3.) The Court notes that the United States did not request a narrowing of the request for dis-

covery nor did it provide any information which it may have thought was appropriate. *Cf. Wayte v. United States,* 470 U.S. 598, 604, 105 S.Ct. 1524, 1529, 84 L.Ed.2d 547 (1985) (after district court granted broad request for discovery, "the Government produced some documents and agreed to make some Government officials available but, citing executive privilege, it withheld other documents and testimony"). The United States Attorney made a blanket refusal and, for the most part, merely reiterated its opposition to the Court's determination that Defendants had made a nonfrivolous motion. The United States Attorney consistently has attempted to thwart the Court's efforts to resolve the issue of selective prosecution conscientiously, deliberately, and within the bounds of the precedent of the Fourth Circuit Court of Appeals.

The United States Attorney's second objection that spoke directly to the substance of the requests for discovery was that the statistical data requested by Defendant Palmer "is so wide ranging and any government response so dependent upon files and records not available or accessible to the United States Attorney's Office, that it would be physically impossible to respond by Tuesday, December 12, 1995, *even if we sought to comply with these requests.*" (Ans. at 4) (emphasis added). Again the Court notes the complete failure of the United States Attorney to comply with the letter and spirit of the Court's order of December 5, 1995. First, the United States Attorney did not offer any information for the current year, which is presumably still maintained at its office. Second, the Court takes judicial notice of the archival system used by the United States Attorney. In evaluating the United States Attorney's Answer, the Court notes that the Answer failed to request an extension of time to retrieve the documents. Furthermore, in the hearing of December 4, 1995, the United States *represented to the* Court that the cases for 1990 and 1991 had been sent to archives. At no time did the United States notify the Court that more recent information, i.e., that which Defendants requested, was in archives. The United States Attorney also refused to provide the information because it "does not maintain

and compile statistical figures sorting defendants by race." (Ans. at 4.) Although the United States Attorney was able to compile such information for the cases of at least one of its AUSAs for the hearing held on December 4, 1995 to refute Defendants' claim, they suggest that they are unable to do so to the extent Defendants requested. Yet AUSA Kevin Comstock's testimony at the hearing on December 4, 1995, calls this suggestion into doubt. He provided a racial-breakdown of the cocaine base, "crack," cases he has prosecuted and testified that he has been an AUSA since *May of 1992.* (Tr. at 33.) Defendants requested information for cases between *January 1, 1992 and the present.*

AUSA Comstock also testified that the race of a defendant is provided on the "defendant information form" which is presented at the same time as the presentment of the indictment to the grand jury and is part of the information that goes to the court. (Tr. at 40.) Yet, on December 20, 1995, Assistant United States Attorney Robert J. Seidel, Chief of the Norfolk and Newport News Criminal Division, submitted an affidavit to the Court in which he indicated to the Court that the United States Attorney cannot provide any data on the race of defendants prosecuted. The Court certainly cannot ignore that racial data may be retrieved from defendant information sheets, which AUSA Comstock acknowledged existed, rap sheets, criminal records, case agents or sources other than those called to the Court's attention by AUSA Seidel. The Court only can assume that these records are maintained by the United States Attorney, although the numbers may not appear in an easily-produced chart or database. Recognizing the possible drudgery and time-intensive nature of the task, the Court notes that again, the United States Attorney did not request additional time to compile this information; it simply refused to answer any interrogatories or produce any information.

■ In light of the United States Attorney's persistent refusal to provide any of the requested information, the Court realizes that the trial may not move forward as scheduled. The United States Attorney frustrated the Court's effort to consolidate over

twenty motions to dismiss for selective prosecution. Belatedly, in the hearing, December 20, 1995, Justin Williams, Chief of the Criminal Division for the Eastern District of Virginia, who handled the hearing on December 4, 1995, indicated that the United States now desires to consolidate the cases to dispose of the motions *before* the defendants in the other two cases are given materials pursuant to the Jencks Act. The United States also filed in writing this motion to consolidate late in the afternoon of December 20, 1995. This request seeks to deny the defendants in the other cases an opportunity to appropriately raise the motion to dismiss the indictments. The Court cannot determine what information pertinent to a claim of selective prosecution other defense counsel may find in the materials released to them pursuant to the Jencks Act. Moreover, defense counsel may rely on information different from that relied upon by Defendants Olvis and Palmer to support their motions. Therefore, the Court declines to consolidate these cases for the resolution of these motions prior to the release of the materials to be provided pursuant to the Jencks Act.

 Federal courts have general supervisory power over the administration of justice in federal judicial proceedings. *United States v. Omni Int'l Corp.*, 634 F.Supp. 1414, 1436 (D.Md.1986) (citations omitted). Courts have dismissed criminal prosecutions because of serious government abuse in the investigations leading to the indictment. *Id.* (citing *United States v. Lawson*, 502 F.Supp. 158, 170 (D.Md.1980)) (other citations omitted). The Supreme Court has held, however, that a court may not use its supervisory power to circumvent the harmless-error inquiry of Rule 52(a) of the Federal Rules of Criminal Procedure. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). This Court finds that the harmless-error inquiry is not appropriate in this context. Here, the Court is faced with an alleged constitutional violation; selective prosecution presents potential prejudice of great magnitude to Defendants. The

Court recognizes that "although prosecutorial discretion is broad, it is not 'unfettered.' Selectivity in enforcement of criminal laws is ... *subject to constitutional constraints.*" *Id.*, 470 U.S. at 608, 105 S.Ct. at 1531 (citing *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)) (emphasis added). Thus in view of the United States Attorney's refusal to comply with the Court's order of December 5, 1995 ordering discovery, dismissal of the indictments is the appropriate remedy.[7] *Cf. United States v. Armstrong*, 48 F.3d 1508 (9th Cir.1995), *cert. granted* — U.S. ——, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995) (dismissing indictments when Government chose not to comply with discovery order).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Government's Motion to Consolidate Related Cases for Purposes of Defendants' Motions to Dismiss Indictment for Selective Prosecution. Furthermore, the Court **DISMISSES** the indictment charging Defendants Olvis and Palmer. The Court **STAYS** the order of dismissal, pending the United States' appeal to the United States Court of Appeals for the Fourth Circuit. The Court, however, will entertain a motion for a review of the detention order of Defendant Palmer.

It is so **ORDERED.**

---

7. Courts also have the inherent power to impose sanctions (jail/incarceration) on attorneys who fail to comply with discovery orders. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). To date, the Court has refrained from exercising this power.