**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 99-4048

LIONEL S. CHAMBERLAIN, a/k/a
Lonnie,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4177

MYRON ARVEL WARD, a/k/a Tank,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4251

MARCUS DARRELL MACK,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-97-40)

Argued: June 6, 2000

Decided: August 3, 2000

Before WIDENER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Widener wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** J. Lloyd Snook, III, SNOOK & HAUGHEY, P.C., Charlottesville, Virginia, for Appellants. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** John S. Hart, Jr., JOHN S. HART, JR., P.C., Harrisonburg, Virginia, for Appellant Ward; John Q. Adams, Harrisonburg, Virginia, for Appellant Chamberlain. Robert P. Crouch, Jr., United States Attorney, Joseph W.H. Mott, Assistant United States Attorney, Bruce A. Pagel, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Lionel Chamberlain, Myron Ward, Marcus Mack, and co-defendants of a wide ranging drug trafficking conspiracy. Finding no reversible trial or sentencing error, we affirm.

I.

Appellants' principal argument on appeal is that the district court erred in failing to dismiss the indictment because of government misconduct in providing them false evidence during discovery.

2

This evidence consisted of a report fabricated by FBI Agent Frank Harman. The report recounted a statement by informant James Page that he knew the appellants but had no knowledge of any drug dealing activities by them. According to the government, Agent Harman fabricated the report because Page was afraid of retaliation from members of the drug conspiracy. The Government provided this report to the defense as part of pre-trial discovery. At trial, Agent Harman testified that he had told the prosecutors about the false report, but "d[id]n't recall which one [of the Assistant United States Attorneys on the case he] informed." The prosecutors represented that neither had knowledge that the report was false until the weekend before the trial began; on the next Monday, after opening statements, the prosecutors assertedly told the attorney for one of the defendants (but none of the appellants) of the fabrication. The prosecutors did not expressly inform appellants' counsel of the false report until another defense counsel began to cross-examine Page about the document. Appellants moved for a mistrial upon learning of the false report. The district court denied those motions and also denied defense requests to require the prosecutors themselves to testify, but the court did permit the defense to offer the report into evidence and to question Agent Harman extensively about it before the jury.

Like the appellants, we are troubled by the government's conduct in this case. Agent Harman fabricated a report with the intent of misleading the defendants through their attorneys. However, we must reject the appellants' contention that this prosecutorial conduct, simply because it is "so outrageous," requires the district court to dismiss the indictment. More is required; specifically, in order to gain dismissal of an indictment a defendant must demonstrate not just that the government engaged in misconduct but also that this misconduct prejudiced him. See United States v. Derrick, 163 F.3d 799, 807 (4th Cir. 1998); see also Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1987); United States v. Hasting, 461 U.S. 499, 505 (1983); United States v. Morrison, 447 U.S. 361, 365-67 (1981) (holding prejudice required to reverse for government misconduct in Sixth Amendment context); United States v. Payner, 447 U.S. 727, 737 (1980) (holding a court's supervisory power must be exercised "with some caution" and with a view towards balancing the interests involved).

The Supreme Court has repeatedly emphasized prejudice as a prerequisite for a court's exercise of supervisory powers to address pro-

3

secutorial misconduct. In Hasting, the Court held that a court could not invoke its supervisory powers to reverse a conviction for government misconduct where the alleged misconduct was harmless. 461 U.S. at 505. In Nova Scotia, the Court reaffirmed Hasting, upholding a district court's refusal to dismiss an indictment despite clear prosecutorial misconduct; the court explained that "the District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct." 487 U.S. at 263. In both cases the Court relied on its discussion in Payner in which it noted the limitations on and cautioned restraint in the use of the supervisory power. 447 U.S. at 737.

In Derrick, we applied these principles in a case involving prosecutorial misconduct far more egregious than that here. Federal prosecutors in that case failed to disclose exculpatory materials in their possession on numerous occasions, even after the district court entered explicit orders that the government produce "all documents and/or materials in [its] possession . . . dealing with these cases and not presently available to the defendants" and that "should the government come into possession of any evidence which might impact on [the government's allegations], such information and/or materials shall be immediately submitted to this court for in camera review." Derrick, 163 F.3d at 804-05. The district court, after learning of numerous violations of these orders, required the government to produce all related exculpatory and non-exculpatory documents for the defendants, and subsequently dismissed the indictments. We reversed because, since the prosecution was ultimately ordered to produce all documents, the misconduct had caused the defendants no prejudice.

In the case at hand, appellants do not even assert that they suffered any prejudice because of the governmental misconduct. Similarly, after close review of the record, we too can discern no prejudice as a result either of the deception itself or of the prosecution's delay in revealing it. In opening argument, two defense attorneys referred to Page before learning of the fabrication. The first, an attorney for another defendant, stated that "[t]here will be evidence that shows that [Page] made contradictory statements with respect to these events subsequent to the occurrence of those events" and that "he's made a statement inconsistent subsequent to the events of about whenever he was questioned." Appellant Mack's counsel then said in opening that

4

"Mr. Page is not a trustworthy person" and that "you [will] have serious questions about whether you can believe James Page." These statements are not inconsistent with the other evidence in the case, which indicates that Page dishonestly took advantage of his informant status and used government money to purchase drugs. The statements thus do not realistically undermine defense counsel's credibility with the jury, particularly in light of the fact that these same counsel later impeached Agent Harman with the fabricated documents.

Nor were appellants prejudiced in their cross examination of Page or Agent Harman. Page admitted on the stand that "[t]here w[ere] a lot of false statements put out by the FBI and different law enforcement agencies." Moreover, the only attorney to try to impeach Page with the report before prosecutors admitted the fabrication to the court did not represent the appellants. Prior to that brief and aborted attempt at impeachment, no one had referred to the report in the cross examination. Appellants' counsel vigorously cross-examined Agent Harman, who did not testify until all defense counsel had learned of the fabrication. The district court specifically allowed defense counsel wide latitude in cross-examination. Other defendants' counsel also cross-examined Agent Harman on the report. In sum, the prosecutor's delay in revealing the deception did not prejudice the defense in any aspect of its case.

We note too that deterrence of government misconduct in the future does not justify reversal in the absence of a showing of prejudice. "[D]eterrence is an inappropriate basis for reversal . . . where means more narrowly tailored to deter objectionable prosecutorial conduct are available." Hasting, 461 U.S. at 506 (quoted in Derrick, 163 F.3d at 807). Here, the district court fashioned an appropriate "narrowly tailored" remedy to counter the government misconduct. The district court allowed the defense to use the report to cross examine and impeach state witnesses, to read it to the jury, to herald it as a document given to them by the prosecution, to refer to it in summation, or to use it in any other way the defense chose. The court acted well within its discretion in refusing to permit the dramatic disruption of the trial that would have resulted from calling a prosecutor as a witness.

In sum, the district court did not abuse its discretion in refusing to dismiss the indictment when appellants utterly failed to demonstrate

5

that the government misconduct prejudiced them. Indeed, under controlling precedent, to have dismissed the indictment absent prejudice would have been error. See Nova Scotia, 487 U.S. at 263; Derrick 163 F.3d at 807.

II.

The indictment charged and the jury convicted appellants of participating in a single drug trafficking conspiracy with other co-defendants. Appellants maintain that the government offered insufficient evidence to establish that they were part of the same conspiracy as the other defendants. Appellants do not contend that the district court improperly charged the jury on the law relating to conspiracy. Moreover, they concede that they had the same customers as the other defendants, they do not dispute that they used the homes of the same crack addicts used by the defendants to sell crack, and they recognize that two persons, Rick Washington and Marco "Mikey" Rodriguez, engaged in drug trafficking both with them and with the other defendants. Nevertheless, they argue that because there is no evidence of common suppliers, their drug activities were separate from the conspiracy involving the other defendants.

A court will uphold a jury's finding of a single drug distribution conspiracy even when the participants "may have bought drugs from other sources at various time." United States v. Johnson, 54 F.3d 1150, 1154 (4th Cir. 1995). Indeed, the fact that the defendants charged in the conspiracy "either did not know or had minimal contact with each other" is not sufficient for us to reverse a jury's finding of a single conspiracy. Id.; see also United States v. Capers, 61 F.3d 1100, 1108 (4th Cir. 1995) ("The government need not prove that a defendant knew everyone in the conspiracy.").

Appellants' reliance on United States v. Whitehead, 539 F.2d 1023 (4th Cir. 1976), and United States v. Levine, 546 F.2d 658 (5th Cir. 1977), is misplaced. In those cases the government did not allege that the defendants engaged in a single conspiracy. Moreover, as the court in Levine explained, the offenses at issue there involved distinct activities "aris[ing] from different factual matrices, implicating different defendants at different times." 546 F.2d at 662. In contrast, the government here asserted and provided evidence that these defendants

were involved in the same single, overarching conspiracy as the other defendants. The jury, after being properly instructed, agreed. The appellants offer no authority to support their contention that, with such evidence and proper instructions, the jury's verdict that the defendants were part of the same conspiracy was contrary to law.

III.

Finally, Appellant Mack asserts that the district court improperly enhanced his sentence for his leadership role in the conspiracy. Specifically, he contends that insufficient evidence supported the court's finding that he was responsible for the actions of several other defendants.

The fatal weakness in Mack's assertion is that Agent Harman testified that Mack had told him that several people assisted him in his drug distribution operation and that he brought down approximately two ounces of crack every couple of weeks. The district court found this testimony credible and, based on this testimony and the probation officer's report, found that Mack had been a significant figure with a leadership role in the conspiracy. If believed, Agent Harman's testimony certainly supports a finding that Mack supervised others and played a significant supplier role; we defer to the district court on credibility determinations, and this testimony suffices to support the district court's finding.

IV.

Because appellants suffered no prejudice from government misconduct and appellants' other arguments are meritless, the convictions and sentences are in all respects

AFFIRMED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the opinion of the majority so far as it holds that there was no reversible error in the district court's refusal to dismiss the indictment.

7

As to the motion for mistrial, however, I respectfully dissent. It is my opinion it was an abuse of discretion not to have granted that motion which came early in the game. The gross misconduct of the FBI agent which, according to the version of that agent, was joined in by one or more of the Assistant United States Attorneys connected with the case, should have been given more weight and the defendants should not have been required to proceed with the case in the face of such outrageous fraud for which, so far as we are presently advised, there has not even been any discipline by the Justice Department.

We are placing too readily a stamp of approval on conduct which should not be tolerated in ordinary circumstances as here.

8