

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2009

# USA v. Poet

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3933

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Poet" (2009). *2009 Decisions.* Paper 1790.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1790

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3933

UNITED STATES OF AMERICA

v.

ALBERT POET,
                    Appellant
(D.C. Crim. No. 06-cr-00643)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
District Judge:  The Honorable Anne E. Thompson

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

Before:  BARRY, CHAGARES, Circuit Judges, and COHILL, Jr.,[*] District Judge

(Opinion Filed: March 3, 2009)

OPINION

COHILL, Senior District Judge.

---

[*]  Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

Defendant Albert Poet appeals his conviction for thirteen counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and one count of misbranding a drug while held for sale, in violation of 21 U.S.C. §§ 331(k), 333(a)(2), 352(i)(3) and 18 U.S.C. § 2. We will affirm.

## I.

Because we write only for the parties, we set forth only those facts that are relevant to our analysis.

Dr. Albert Poet is a physician who practices in New Jersey. Among other things, he performed wrinkle removing treatments for his patients. In February 2005, the Government began investigating Dr. Poet's purchase and use of a form of Botulinum Toxin Type A, a highly poisonous protein toxin which can be used to treat forehead wrinkles. He purchased the drug ("Tritox") from Toxin Research International, Inc., a Tucson, Arizona pharmaceutical company. Tritox was not approved by the Food and Drug Administration; the only form of drug containing Botulinum Toxin Type A which is approved by the FDA is Botox® or Botox® Cosmetic which is manufactured by Allergan, Inc.

On June 6, 2005, the Government and Dr. Poet entered a proffer agreement. Dr. Poet was interviewed, during which he gave a statement. Dr. Poet was indicted on August 24, 2006. The Indictment charged that Dr. Poet, in an effort to obtain surplus profits, administered to his patients non-FDA-approved Tritox, which was clearly labeled

2

"Not For Human Use" and was significantly less expensive than Botox® Cosmetic. At the same time, the indictment charged, Dr. Poet led patients to believe, through his advertisements, consent forms and such, that he was injecting them with FDA-approved Botox® Cosmetic, all the while charging them the surplus, higher amount that he would have charged for treatment with the more expensive, FDA-approved drug.

On January 16, 2007, the Government filed a pretrial motion to enforce the proffer agreement. The motion was filed as a means of putting Dr. Poet on notice that if he presented an argument or evidence contrary to the facts he had asserted in the proffer, the government wanted to present evidence of Poet's own words to the jury. The District Court granted the motion after hearing argument. In addition, prior to trial, Dr. Poet sought dismissal of the indictment on the grounds, inter alia, that Congress had determined that fraud crimes involving drugs regulated by the FDA must be prosecuted under the Food, Drug and Cosmetic Act. The District Court denied the motion to dismiss.

After his conviction, Dr. Poet renewed his motion to dismiss the indictment and moved for acquittal and a new trial, arguing, inter alia, that he was hampered in his presentation of "state of mind"evidence, and, again, that he could not be charged with mail fraud because all of the Title 18 charges against him were precluded by the Food, Drug, and Cosmetic Act. The District Court denied these motions.

On September 28, 2007, Dr. Poet was sentenced to 14 months' imprisonment, a term of 2 years' supervised release, a fine of $15,000, and restitution in the amount of

$6,050.  He now appeals.

**II.**

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's rulings on objections to the admissibility of evidence of good faith and state of mind to determine if the alleged errors so infected the jury's deliberations  as to have had a substantial influence on the outcome of the trial.  U.S. v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994).  We exercise plenary review over whether the government breached the proffer agreement.  U.S. v. Coyle, 63 F.3d 1239, 1343 (3d Cir. 1995).  We also exercise plenary review over the District Court's interpretation of a statute.  U.S. v. Wasserson, 418 F.3d 225, 232 n. 4 (3d Cir. 2005).

**III.**

Dr. Poet's first argument is that the District Court deprived him of a fair trial by barring him from presenting evidence of his state of mind or good faith.  He further argues that the District Court's rulings were tainted by its knowledge of the proffer agreement, and in addition, various rulings were designed, perhaps unconsciously, either to force him to testify or to deprive him of his defense.  We find no error.

Mail fraud is a specific intent crime and the government is required to prove beyond a reasonable doubt that the defendant intended to defraud.  U.S. v. Bakker, 925 F.2d 728, 738-39 (4th Cir. 1991).  The government must prove the following elements: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud,

(2) with the specific intent to defraud, and (3) the use of the mails in furtherance of the scheme. U.S. v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004).

At trial Dr. Poet's defense was that the TRI product he used was marketed to him as a drug currently undergoing the FDA approval process, that he found the TRI product to be more efficacious than the Allergan, Inc. brand, that he referred to all of his wrinkle treatments by what he calls a generic name "botox" and that he did not, as is standard medical practice, routinely tell his patients which drug he was using or that the drug was not FDA approved. Specifically, Dr. Poet sought to introduce testimony of an expert physician as to the reasonableness of his interpretation of the Tritox drug's label. This testimony, like much of the testimony he attempted to elicit, was excluded on the grounds that the defendant's state of mind was difficult to establish through the testimony of someone other than the defendant himself. Dr. Poet further argues that the District Court erred in ruling the following evidence was irrelevant: evidence that the term "Botox" had been used before Allergan, Inc. secured its trademark and therefore the trademark was invalid, evidence that the term was used in a generic fashion, evidence of the quality and effectiveness of Tritox, testimony of Poet's statements to others as to what he had heard about Tritox, and cross examination of the government's expert on numerous of these same issues.

We find that none of the alleged errors so infected the jury's deliberations so as to have had a substantial influence on the outcome of the trial. Copple, 24 F.3d at 547 n.17.

5

We note that a district court's decision to exclude arguably relevant evidence is reviewed for an abuse of discretion, with that discretion construed especially broadly in the context of Fed. R. Evid. 403. U.S. v. Kemp, 500 F.3d 257, 295 (3d Cir. 2007). Whether the trademark for Botox® Cosmetic was valid or not is irrelevant as to whether Dr. Poet misled his patients into believing that they were receiving the FDA-approved Botulinum Toxin Type A. Furthermore, we agree that whether Tritox is effective is irrelevant to the issue of whether Dr. Poet intended to mislead his patients by substituting one drug for another; 18 U.S.C. § 1341 does not require that the intended victim be actually harmed or defrauded. U.S. v. Frey, 42 F.3d 795, 800 (3d Cir. 1994).

In addition, Dr. Poet sought to admit the statement of a witness to show that someone else had informed him that Tritox was in the FDA-approval process; this is clearly inadmissible hearsay. Fed. R. Evid. 803(3). We also find that the District Court did not abuse its discretion when it excluded testimony as to the common practice of doctors regarding the FDA status of drugs that they administer. Such evidence would have had no bearing on whether Dr. Poet specifically intended to mislead his patients about the identity and FDA-approval status of the drug injected into their bodies.

Even so, after reviewing the record we note that much of the evidence of which Dr. Poet now complains, e.g., the generic nature of the term "botox", the effectiveness of Tritox, and Poet's belief that Tritox was in the FDA-approval process, was heard by the jury through alternative means, thus rendering any error harmless. Moreover, although

Dr. Poet may have felt constrained by the proffer agreement and the content of his proffer statement, it is clear that the District Court's rulings were not "tainted" by its knowledge of the proffer agreement.

Dr. Poet's next major argument is that the government violated the express terms of the proffer agreement when it presented the proffer statement to the trial court in its pretrial motion. The proffer agreement provided that Dr. Poet was waiving his right to the protections of Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f), that is, that statements made during plea discussions that do not result in a guilty plea are ordinarily inadmissible at trial. Poet does not allege that the proffer agreement was entered into unknowingly or involuntarily.

Section 1 of the proffer statement provides that "no statements made by your client during the interview will be used against your client in the government's case-in chief at trial or for purposes of sentencing . . . . " Here the government did not offer the proffer agreement during its case-in-chief. Instead, the government sought a pretrial ruling that it could use Poet's proffer statement in the event that he "presents a case, through argument, evidence, cross-examination, or direct testimony, contrary to the facts he asserted in the proffer." The District Court agreed that – if necessary – the government could "introduce the defendant's own words to provide a full picture of the situation for the jury and the Court." Judge Thompson further explained that she was "going to have to study the proffer and make sure I have more than just a casual acquaintance with it which is

7

what I have now . . . so that when I hear objections during the course of the trial, I would be in a position to rule on them" and not have to "stop the trial as we go along."  We find that the District Court did not err in adopting this sensible procedure.

As to Dr. Poet's third argument that he could not be charged under the mail fraud statute, we find that the District Court did not err in not dismissing the thirteen mail fraud counts in the indictment.  The case law, statutory language and history support the finding that the government was justified in charging him with that offense. First, we note that there is no indication that Congress intended that all conduct that is independently violative of the mail fraud statute must instead be prosecuted under the Food, Drug and Cosmetic Act.  Rather, the government has some discretion to chose to prosecute defendants under one of two overlapping statutes so long as there is no discrimination against any class of defendants and assuming, as is the case here, that the conduct alleged violates either statute.  U.S. v. Batchelder, 442 U.S. 114, 123-24 (1979).  Second, we note that the conduct alleged against Dr. Poet is unambiguously encompassed in 18 U.S.C. §1341.  He devised a scheme to defraud his patients by receiving through commercial interstate carrier, non-FDA-approved Tritox, and administered this drug to his patients while causing them to believe that they would be receiving FDA-approved Botox® Cosmetic, and charging them the Botox® Cosmetic price even though Tritox cost less than half as much for him to purchase.  Moreover, the mail fraud charge was separate and distinct from a misbranding charge because it required the government to prove two

8

elements separate from the elements of the misbranding offense, namely, that Dr. Poet (1) used an interstate commercial carrier (2) in furtherance of the scheme or artifice to defraud.  Compare 21 U.S.C. §§ 331(k), 333(a)(2), 352(i)(3) with 18 U.S.C. § 1341.

Finally, Dr. Poet argues that the indictment should have been dismissed because a government witness, Special Agent Marc Hess, made what Dr. Poet describes as an "intentional misstatement of material fact" which improperly influenced the grand jury when it decided to indict Dr. Poet.  There is no dispute that Hess incorrectly stated in his testimony before the grand jury that patients of another doctor in Florida had been seriously injured by injections with the TRI-manufactured Tritox product.  In fact, as the government later learned, another product supplied by TRI's supplier had caused the injuries.  We find that the District Court did not err when it found that this testimony did not prejudice Dr. Poet because the testimony was confined to one question, was not an allegation that was included in the indictment, and was not material to the elements of the offense charged.  When viewed in conjunction with all the evidence which was presented to the grand jury, we cannot say that this testimony could have had a substantial influence on the outcome of the proceeding.  Bank of Nova Scotia v. U.S., 487 U.S. 250, 256 (1988).

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.