UNITED STATES of America

v.

**Arthur L. PIMENTAL and Loretta R. Pimental, Defendants.**

**Crim. No. 99–10310–NG.**

United States District Court, D. Massachusetts.

Dec. 3, 2001.

Harvey R. Peters, Peters & Moscardelli, James C. Rehnquist, Goodwin Procter LLP, Boston, MA, for defendants.

Mark J. Balthazard, United States Attorney's Office, Boston, for U.S.

### MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS

GERTNER, District Judge.

On February 20, 2001, I ruled that the government had violated Fed.R.Crim.P. 6(e) ("Rule 6(e)") when it disclosed secret grand jury materials to private investigators from the Massachusetts Insurance Fraud Bureau ("the IFB") in connection with the investigation of the defendants, Arthur L. Pimental and Loretta R. Pimental, ("the Pimentals"). *United States v. Pimental,* 199 F.R.D. 28 (D.Mass.2001) (*"Pimental I"*).

On April 3, 2001, I addressed the government's motion to reconsider that decision. I spelled out in further detail my conclusion that there had been a 6(e) violation. *United States v. Pimental,* 201 F.R.D. 24 (D.Mass. 2001) (*"Pimental II"*). I rejected the government's insistence that phrase "government personnel" in the Rule somehow meant "privately employed personnel" or "private experts under contract with the government." I called for further briefing on the following two questions, a) whether the Court must find the government violated Rule 6(e) "knowingly," or in the alternative, in "bad faith," before I may explore the question of the appropriate remedy through further discovery; b) whether the government's violation was in fact "knowing" or in "bad faith".

In my Order Re: Government's Motion for Reconsideration, Crim. No. 99–10310–NG (June 4, 2001) (*"Pimental III"*), I answered those questions. I concluded that the defendants would be entitled to relief for the Rule 6(e) violation, whether or not the government's actions were knowing or in bad faith. The appropriate standard for relief was the "harmless error" standard of Rule Fed. R.Crim.P. 52(a), a standard that looked to the impact of the violation on the grand jury's decision, and not to the government's conduct.

Finally, I concluded that the government's violation of the rule was not a "knowing" violation. My ruling that the government's disclosure practices violated Rule 6(e) required "a lengthy analysis and a consideration of numerous factors," after a full adversary hearing. "The attorneys for the government were entitled to hold, and aggressively assert" a contrary position, especially in the light of the district court's past practice of "signing off on the government's disclosures." *Pimental III,* p. *11.[1]

The only issue remaining was the question of whether the government's 6(e) violation prejudiced the Pimentals within the meaning of Rule 52(a) and the appropriate remedy. The Pimentals called for dismissal or suppression of the evidence in the grand jury's possession that the government provided to nongovernmental personnel in order to punish the government for transgressing Rule 6(e) and the privacy interests that it protects.

Although I am sympathetic to the Pimentals' plight, I cannot grant them the relief that they request. Since the government has shown under the harmless error test of Federal Rule of Criminal Procedure 52(a) ("Rule 52(a)") that its Rule 6(e) violation did not substantially affect the grand jury's decision to indict the Pimentals, I am obliged to deny the motion. For this reason, and for the reasons explained in greater detail below, the Pimentals' motion to dismiss or in the alternative, to suppress certain evidence [docket entry # 39] is **DENIED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Pimentals, who are husband and wife, own and operate a steel business together. The government alleges that the Pimentals defrauded their insurers by misrepresenting the type of work performed by their employ-

---

1. Of course, I noted that future applications will be subject to a different standard:

 ... I must take this opportunity to impress upon the government its heightened burden to inform the district court of the current state of statutory and decisional law, even non-controlling precedent, when the government proceeds on an ex parte basis.... While I find the government's conduct in the instant case was not sanctionable as a contempt of court, the need for the government to remain vigilant, and to responsibly shoulder the burdens accompanying its special role in the criminal process, remains constant.
 *Pimental III, supra* at **12–13.

ees and under-reporting their employees' salaries in order to receive lower Workers' Compensation premiums.

Although the investigation later involved agents from the Federal Bureau of Investigation ("FBI") and was prosecuted by the United States Attorney's Office ("USAO"), private investigators from the Insurance Fraud Bureau of Massachusetts ("IFB"), a private investigatory agency that receives 100% of its budget from private insurance companies, performed the preliminary investigation into the matter.[2]

During the course of the investigation into the Pimentals, a federal grand jury subpoenaed certain bank records of the Pimentals, presumably to determine if the Pimentals had been fraudulently understating the size of their payroll. The USAO subsequently filed an ex parte motion seeking to disclose grand jury materials to IFB investigators as "outside experts assisting" in the investigation. The USAO made the request pursuant to Rule 6(e)(3)(A)(ii), which authorizes disclosure to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed R.Crim. P. Rule 6(e)(3)(A)(ii). Judge Saris summarily granted the government's motion by signing a form order submitted by the government.

The USAO then disclosed the bank records obtained by the grand jury's subpoena to Scott Faragi ("Faragi"), an IFB investigator who was investigating the Pimentals. Faragi later testified before the grand jury concerning the Pimentals. His testimony, which comprised a majority of the testimony[3] consisted both of testimony in general concerning how the insurance industry worked as well as testimony addressing the Pimentals more specifically. In particular, he summarized and characterized the information contained in the Pimentals' bank records both orally and in the form of a spreadsheet provided to the grand jury. Subsequently, the grand jury voted to indict the Pimentals and charge them with one count of conspiracy, in violation of 18 U.S.C. § 371, and fourteen counts of mail fraud, in violation of 18 U.S.C. § 1341.

On July 17, 2000, the Pimentals moved to dismiss the indictment against them on the Rule 6(e) violation. On February 20, 2001, I issued an Order agreeing that the government had violated the Rule when it had provided materials obtained through the grand jury's subpoena power to IFB agents, including Faragi. *"Pimental I"*. I also ordered the government to provide the Pimentals with discovery relating to the government's violation, including all documents and information relating to secret grand jury materials improperly provided to IFB agents.

In a subsequent June 4, 2001, Order on the government's motion for reconsideration of my February 20, 2001, ruling, *Pimental III*, I found that the appropriate standard governing the Pimentals' motion to dismiss the indictment was the "harmless error" standard of Rule 52(a) as identified in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

Thereafter, both sides filed supplemental memoranda addressing the appropriate remedy, if any, for the government's Rule 6(e) violation. I held a hearing addressing the arguments raised in these briefs and the underlying motion to dismiss on November 7, 2001.

**2.** As I indicated the "IFB inhabits a region of the private/public spectrum that is much closer to a purely private agency. First, the IFB receives 100% of its budget from private insurance companies. All IFB employees, therefore, receive their salaries directly from the insurance associations (i.e., the AIB and WCRIB). Second, neither the state of Massachusetts nor the federal government exercises administrative control over the IFB and its policies. The state officials serving on the IFB board cannot exercise control over the IFB; they represent a select minority of board members.... Indeed, private interests govern the IFB's operations. Third, IFB investigators do not operate under the control and direction of the USAO or the Commonwealth."

*Pimental I, supra* at 33.

**3.** Faragi was one of four witnesses who appeared before the grand jury. His testimony comprises 126 pages of the 204-page grand jury transcript.

## II. *LEGAL ANALYSIS*

### A. *Standard For Dismissal And Burden Of Proof*

 As I explained in *Pimental III*, the harmless error test provided in Rule 52(a) determines whether dismissal of an indictment is an appropriate remedy for a nonconstitutional error such as the government's violation of Rule 6(e).[4] *U.S. v. Mechanik*, 475 U.S. 66, 71–72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *Bank of Nova Scotia*, 487 U.S. at 254, 108 S.Ct. 2369 (applying the "harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)"). Under the harmless error test applied to nonconstitutional violations involving grand jury proceedings, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. 2369. If the Rule 6(e) violation was not a knowing and bad faith violation of the rules, and did not prejudice the defendants, I may not dismiss the indictment against them.[5]

 The Supreme Court has also made clear that under the harmless error analysis of Rule 52(a), the government bears the burden of proving an absence of prejudice to the defendant. *See United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Olano*, the Court distinguished Rule 52(a)'s harmless error test with Rule 52(b)'s plain error test. When a court applies the two rules, it should perform "the same kind of inquiry, with one important difference: It is the defendant [under Rule 52(b)] rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. The Court defined Rule 52(a)'s harmless error standard as "[w]hether the Government could have met *its burden* of showing the absence of prejudice, under Rule 52(a)." *Id.* at 741, 113 S.Ct. 1770 (emphasis added). *See also United States v. Mojica-Baez*, 229 F.3d 292, 307 (1st Cir.2000) (recognizing that under Rule 52(a)'s harmless error test, "the government bears the burden of showing that an error did not result in any prejudice.")[6]

Relying heavily on First Circuit cases which advise caution before dismissing a grand jury indictment, the government argues that the defendant, not the government, should bear the burden of proving prejudice under the harmless error test of Rule 52(a). *See generally, United States v. Li*, 206 F.3d 56, 62 (1st Cir.2000) (stating that "dismissing an indictment is an extraordinary step"); *United States v. Giorgi*, 840 F.2d 1022, 1030 (1st Cir.1988) (instructing courts to "be reluctant to dismiss an indictment.") However, although these cases compel a heightened vigilance when applying the Rule 52(a) test, they do not contradict the Supreme Court's clear command that the government bears the burden of proving an absence of preju-

---

4. Rule 52(a) provides in full: "Any error, defect, irregularity or variance which does not effect substantial rights shall be disregarded." Fed. R.Crim.P. 52(a).

5. This case where the government unknowingly violated a nonconstitutional rule is not one where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257, 108 S.Ct. 2369. *See Vasquez v. Hillery*, 474 U.S. 254, 260–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury compelled dismissal of indictment); *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (exclusion of women from grand jury necessitated dismissal of indictment).

Nor is it a case in which there was such a knowing and bad faith violation of grand jury rules that the integrity of the proceedings was compromised.

6. As one commentator describes it, "[t]he harmless error provision (Rule 52(a)), normally, although not always, operat[es] in favor of the prosecution" and "requires the ... court to disregard technical defects in the proceedings below ... if the errors did not affect the substantive rights of the parties. On the other hand, the plain error provision (Rule 52(b)), normally benefitting the criminal defendants, allows a reviewing court to consider errors in the proceedings below even if the injured party failed to properly preserve the error for review, by failing to object in a timely fashion." 57 A.L.R. Fed. 521, § 2 (1999).

dice to the defendant under this analysis.[7]

### B. *Applying the Rule 52(a) Harmless Error Standard*

■ Under the *Bank of Nova Scotia* test, the critical question is whether "the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. 2369. In other words, prejudice must relate directly to the grand jury's decision to find probable cause and indict the Pimentals. Put otherwise, if the evidence improperly before the grand jury due to the government's Rule 6(e) violation is excised, will the evidence properly before the grand jury amply support its finding of probable cause and decision to indict?[8]

This approach of examining the validity of the grand jury's result after subtracting out the impact of any tainted evidence is precisely the same Rule 52(a) harmless error analysis that an appellate court routinely performs when reviewing a verdict after a trial jury improperly has received extra-record information. *See United States v. Santana*, 175 F.3d 57, 66 (finding that to determine whether a trial jury's consideration of extrinsic evidence constituted harmless error, a reviewing court should "assess the record as a whole to determine the impact of the improper evidence upon the jury .... The prejudicial effect of the improper evidence must be weighed against the weight of the properly admitted evidence"), quoting *Lacy v. Gardi-*

*no*, 791 F.2d 980, 986 (1st Cir.1986); *Morgan v. Hall*, 569 F.2d 1161, 1166 (1st Cir.1978). *See also United States v. Weiss*, 752 F.2d 777, 783 (2nd Cir.1985) (advising courts to "assess the possibility of prejudice by reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware.")

In his subsequent testimony before the grand jury, Faragi testified generally about the insurance industry. Faragi also provided the grand jury with an oral summary of the Pimentals' bank records as well as a spreadsheet summarizing them, records with which he had been provided in violation of Rule 6(e). While the Pimentals do not allege that Faragi summarized these documents in a false or misleading way, they argue that this summary evidence, which was before the grand jury as a result of the government's decision to provide Faragi with these records, prejudiced them by substantially affecting the grand jury's decision to indict them.

After considering the entire record of the evidence and proceedings before the grand jury, I conclude that the government has met its burden of demonstrating that the introduction of this improper summary evidence did not prejudice the Pimentals. In arriving at this conclusion, I am obliged to distinguish between Faragi's testimony and spreadsheet summarizing the bank records, on the one hand, and the bank records themselves, on the other. While the Pimentals correctly point to the bank record summary evidence

---

**7.** It is logical that the government should bear the burden of proving an absence of prejudice under this test. It was the government's violation of Rule 6(e) that caused the error to begin with, and the defendants raised a timely objection to this error before their trial commenced. As a matter of fairness, the government should not be able to violate the defendants' rights to secret grand jury proceedings and then dump its misconduct onto the defendants' laps and demand that they prove how this violation hurt them.

Moreover, typically, the party bearing the burden of proof is the party seeking to assert the disfavored contention—here that a violation of the Rules should be excused.

**8.** In some respects, Rule 52(a)'s prejudice analysis which focuses only the effect that the error may have had on the grand jury's decision to

indict seems inadequate to safeguard at least one of the purposes of secrecy provisions of Rule 6(e) "to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). If prosecutors violate Rule 6(e) by disclosing secret grand jury materials, but these disclosures do not affect the grand jury's deliberations, the defendant cannot obtain the individualized remedy of dismissal for this assault against his privacy. Nevertheless, a court may still punish any individual responsible for a knowing or bad faith violation of Rule 6(e) through the use of its contempt power, regardless of whether the violation affected the grand jury's decision to indict.

provided by Faragi as tainted by the government's Rule 6(e) violation, the underlying bank records themselves were properly before the grand jury. They had been obtained by a grand jury subpoena. In any case, the grand jury could fairly consider Faragi's expert testimony about the insurance industry in general (as opposed to his summary evidence of the Pimentals' bank records) because his ability to provide this testimony did not flow from the government's Rule 6(e) violation.

Taken together, Faragi's general expert testimony about the insurance industry plus the underlying bank records without Faragi's testimony or the spread sheet fully support the grand jury's probable cause determination and decision to indict the Pimentals. Therefore, the government's Rule 6(e) violation cannot have "substantially affected" the grand jury's decision to indict or have changed the determination that the grand jury would have arrived at if the tainted evidence had not been introduced, particularly where this tainted evidence did nothing but accurately summarize evidence fairly before the grand jury.[9]

For similar reasons, I must deny the Pimentals' request to suppress the bank records disclosed to Faragi at their trial. The grand jury received the Pimentals bank records through an appropriate use of its subpoena power. The fact that the government wrongly gave Faragi access to these records does not cast an irrevocable taint upon the records themselves.

## III. CONCLUSION

For the reasons stated above, the Pimentals' motion to dismiss or in the alternative, to suppress certain evidence [docket entry # 39] is **DENIED.**

**SO ORDERED.**

9. Even if I were to decide that the government's 6(e) violation had prejudiced the Pimentals and dismissed the indictments against them, I could not grant the Pimentals' request to dismiss the indictments with prejudice without a showing of a knowing violation or bad faith conduct by the government. Because I have already found that the government's conduct in this instance was not in bad faith, any potential dismissal would be need to be without prejudice, leaving the government free to seek indictments against the Pimentals based upon the same underlying conduct.