[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2005
THOMAS K. KAHN
CLERK

No. 04-15212
Non-Argument Calendar

_____

D.C. Docket No. 04-20278-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL IVAN ZORRILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 28, 2005)**

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Manuel Ivan Zorrilla appeals his concurrent 63-month sentences for conspiracy to possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), and 846 ("Count 1"); and possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(i) ("Count 2").  Zorrilla argues on appeal that the district court committed reversible error in sentencing him under the then-mandatory United States Sentencing Guidelines ("federal guidelines"), and based on facts that neither were charged in his indictment, nor admitted by him, in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  For the reasons set forth more fully below, we vacate and remand.

A federal grand jury returned an indictment against Zorrilla, charging him with the above-referenced offenses.  This indictment did not include a drug amount, other than the statutory amount of 100 grams or more of heroin.  Zorrilla subsequently pled guilty to both counts in his indictment, without the benefit of a plea agreement.  During Zorrilla's plea colloquy, he agreed that the government could show that he was responsible for 100 grams or more of heroin, but he disputed the exact amount of heroin proffered by the government, that is, 494

2

grams. At the conclusion of this hearing, the court determined that Zorrilla's plea was free and voluntary, and it adjudicated him guilty.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), which included the following description of Zorrilla's offense conduct. After receiving information from a confidential informant ("CI"), that a person in Miami named Juan Sanchez-Lemus was offering to sell heroin, agents with the Drug Enforcement Administration ("DEA") directed the CI to initiate a drug transaction with Sanchez-Lemus. The CI and Sanchez-Lemus, thereafter, agreed that a courier from Detroit, Michigan, who actually was an undercover agent ("UC"), would travel to Miami with a partial payment of $16,000, in exchange for Sanchez-Lemus supplying an unidentified amount of heroin. The UC met with the CS and Sanchez-Lemus at a mall in Miami, at which time Sanchez-Lemus, who was accompanied by a person later identified as Zorrilla, told the UC that Zorrilla would conduct the transaction. The UC then followed Zorrilla to a vehicle in the mall's parking lot, in which Zorrilla handed the UC a small shopping bag containing a diaper with a brown powder inside of it. A subsequent laboratory analysis by the DEA revealed that 494.9 grams of heroin were recovered from this diaper.

In addition to this offense conduct, the PSI grouped together Zorrilla's two offenses, pursuant to U.S.S.G. § 3D1.2(d); determined that he was responsible for 494.9 gram of heroin; and set his offense level at 28, pursuant to U.S.S.G. § 2D1.1(c)(6) (offense level applicable for offenses involving at least 400 grams, but less than 700 grams, of heroin). The probation officer also recommended a three-level downward adjustment, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. With an adjusted offense level of 25, and a criminal history category of II, Zorrilla's resulting guideline range was 63 to 78 months' imprisonment.

Zorrilla objected to the PSI's failure to recommend an adjustment for his minor role in the offense, pursuant to U.S.S.G. § 3B1.2(b), arguing that he was the least culpable person involved in the conspiracy. Zorrilla also generally objected to the district court's use of the federal guidelines, in light of the Supreme Court's decision in Blakely. The government responded that (1) no minor-role adjustment was warranted because Zorrilla played a substantial role in the conspiracy, and (2) we had directed district courts to continue sentencing defendants under the

federal guidelines unless and until the Supreme Court reached a contrary conclusion in then-pending cases.[1]

On September 28, 2004, at sentencing, Zorrilla renewed his objection to the PSI's failure to recommend a § 3B1.2(b) adjustment, which the government again opposed. The district court overruled this objection, determining that Zorrilla was a substantial participant in a conspiracy involving a significant amount of drugs. Zorrilla also again raised a summary objection to the court's use of the federal guidelines, pursuant to the Supreme Court's decision in Blakely. The district court overruled Zorrilla's Blakely objection, citing to this Court's decision in Reese. After adopting the PSI's finding and confirming that neither party objected to a sentence at the low end of the guideline range, the court ultimately sentenced Zorrilla to 63 months' imprisonment, 4 years' supervised release, and a $200 special assessment fee.

Zorrilla argues on appeal, albeit in the portion of his brief labeled "summary of his argument," that preserved Blakely/Booker error occurred because the court (1) sentenced him based on the then-mandatory federal guidelines, and

---

[1] Prior to the Supreme Court's issuance of its decision in Booker, we had determined that Blakely did not apply to the federal guidelines. See United States v. Reese, 382 F.3d 1308, 1312 (11th Cir. 2004), judgment vacated by Reese v. United States, 543 U.S. ___, 123 S.Ct. 1089, 160 L.Ed.2d 1058 (2005).

(2) determined that he was responsible for 494.9 grams of heroin. Zorrilla also contends that these errors were not harmless because, given the opportunity to consider factors other than the federal guidelines, the court could have imposed a lesser sentence.

As a preliminary matter, the government is arguing that Zorrilla has abandoned his constitutional Booker argument by only including it in the summary portion of his appeal brief. An appellant's brief must contain his argument, including (1) the appellant's contentions and reasons for them, (2) citations to relevant portions of the record and to supporting legal authority, and (3) the applicable standard of review for each issue. See Fed.R.App.P. 28(a)(9). In addition, we have determined that "a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned." See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

In Jernigan, we concluded that the appellant abandoned his challenge to a ruling under Fed.R.Crim.P. 404(b), by only making four passing references to the evidence at issue, each of which was embedded under different topical headings and was "undertaken as background to," or buried in, the claims the appellant expressly advanced. See id. We explained that its requirement that claims be

"unambiguously demarcated" "stems from the obvious need to avoid confusion as to the issues that are in play and those that are not." See id. Similarly, in Kelliher v. Veneman, 313 F.3d 1270 (11th Cir. 2002)—the case on which the government relies in arguing waiver—we concluded that the appellant waived an appellate claim by only mentioning it in the argument section of his initial brief, and by making no arguments on its merits. See id. at 1274 n.3

In the instant case, Zorrilla has set forth in the section of his brief labeled "summary of the argument" the district court's alleged errors under Booker, while he explained in the "argument" section of his brief why these errors were preserved and not harmless. However, unlike the facts in Jernigan and Kelliher, Zorrilla has notified the government and this Court what claims are being advanced, as well as providing supporting arguments for these claims. Cf. Jernigan, 341 F.3d at 1283 n.8; Kelliher, 313 F.3d at 1274 n.3. Thus, although Zorrilla ideally should have placed all of his arguments in the "argument" section of his brief, we do not conclude that he has abandoned any of them by not arguing them on appeal.

Zorrilla also properly preserved both his constitutional and non-constitutional Booker claims in the district court by citing to Blakely in his objections to the PSI and at sentencing. See United States v. Dowling, 403 F.3d

7

1242, 1246 (11th Cir. 2005) (concluding that a defendant either must (1) refer to the Sixth Amendment; (2) Apprendi v. New Jersey, 530 U.S. 224, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), or another other related case; (3) assert his right to have the jury decide the disputed fact; or (4) raise a challenge to the role of the judge as factfinder to preserve a Blakely/Booker claim). Because Zorrilla timely raised a Blakely objection in the district court, we review his Blakely/Booker claim on appeal de novo, but reverse only for harmful error. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (citation omitted). Under harmless-error review, the government carries the burden of proof. Id.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-63. Before Zorrilla's sentencing hearing, the Supreme Court revisited that rule in Blakely, in the context of Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the

8

maximum he may impose <u>without</u> any additional findings." <u>Blakely</u>, 542 U.S. at

___, 124 S.Ct. at 2537 (emphasis in original).

Applying these principles, the Supreme Court held that Blakely's

sentence—which was enhanced under the state guidelines based on the sentencing

court's additional finding by a preponderance of the evidence that Blakely

committed his kidnaping offense with deliberate cruelty—violated the Sixth

Amendment. <u>Id.</u> at ___, 124 S.Ct. at 2534-38. In a footnote, however, the Court

explicitly remarked that "[t]he Federal Guidelines are not before us, and we

express no opinion on them." <u>Id.</u> at ___ n.9, 124 S.Ct. at 2538 n.9.

While the instant case was pending on appeal, the Supreme Court issued its

decision in <u>Booker</u>, finding "no distinction of constitutional significance between

the Federal Sentencing Guidelines and the Washington procedures at issue" in

<u>Blakely</u>. <u>Booker</u>, 543 U.S. at ___, 125 S.Ct. at 749. Resolving the constitutional

question left open in <u>Blakely</u>, the Supreme Court held that the mandatory nature of

the federal guidelines rendered them incompatible with the Sixth Amendment's

guarantee to the right to a jury trial. <u>Id.</u> at ___,125 S.Ct. at 749-51. In extending

its holding in <u>Blakely</u> to the Guidelines, the Court explicitly reaffirmed its

rationale in <u>Apprendi</u> that "[a]ny fact (other than a prior conviction) which is

necessary to support a sentence exceeding the maximum authorized by the facts

9

established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at ___, 125 S.Ct. at 756.

In a second and separate majority opinion, the Court in Booker concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at ___, 125 S.Ct. at 764. Thus, the guidelines range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a). Id. at ___, 125 S.Ct. at 764-65.

Following the Supreme Court's decision in Booker, and on remand, we re-examined in United States v. Reese, 397 F.3d 1337 (11th Cir. 2005), a defendant's guideline sentence that had been enhanced, over objection, because the defendant had possessed a firearm in connection with another felony offense. Id. at 1337. Concluding that the defendant's sentence was in violation of the Sixth

Amendment, we vacated and remanded his sentence and ordered resentencing consistent with the Supreme Court's opinions in Booker. Id. at 1338.

In Paz, we similarly examined a Blakely/Booker challenge to a guideline enhancement based on the district court's factual finding on an amount of loss involved in an offense. Paz, 405 F.3d at 947. We determined that the defendant's sentence was erroneous because (1) it was based on judicially determined facts that were not admitted by the defendant, and (2) it was enhanced under a mandatory guidelines system. Id. at 948. Moreover, we concluded that the government could not show that these errors were harmless because the sentencing transcript clearly showed that, had the district court treated the federal guidelines as advisory, the defendant's term of imprisonment would have been shorter. Id. at 948-49. We, therefore, vacated and remanded Paz's sentence for resentencing consistent with Booker. Id. at 949.

Here, the court set Zorrilla's base offense level at 28, pursuant to U.S.S.G. § 2D1.1(c)(6), based on the judicially determined fact that Zorrilla was responsible for 494.9 grams of heroin. Moreover, Zorrilla did not admit to this specific drug amount during his plea colloquy. Nevertheless, Zorrilla admitted this drug amount at sentencing by not disputing this fact in his PSI. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (concluding that sentence enhancement

11

based on drug quantity did not violate Booker where the defendant did not dispute the facts in the PSI); United States v. Burge, No. 04-13468, slip op. at 2088-89 (11th Cir. May 2, 2005) (rejecting Booker challenge under plain-error review because the defendant admitted facts relating to his relevant conduct by abandoning at sentencing his objections to various factual statements in the PSI). Thus, the court's determination of drug amount did not result in a Sixth Amendment violation under Booker.

As the government concedes, however, the court sentenced Zorrilla with the understanding that the federal guidelines were mandatory, instead of advisory. A non-constitutional Booker error, therefore, occurred. See Shelton, 400 F.3d at 1330-31 (concluding that statutory error occurs when the district court sentences a defendant "under a mandatory [g]uidelines scheme, even in the absence of a Sixth Amendment enhancement violation").

We have determined that there are two harmless error standards for Booker errors, dependent on whether the error is constitutional or statutory. See United States v. Mathenia, No. 04-15250, manuscript op. at 5 (11th Cir. May 23, 2005). We explained in Paz—an appeal involving a constitutional Booker error—that, when a constitutional Booker error occurs, the government only may establish that it was harmless by showing, under a heightened standard, that "it is clear beyond a

12

reasonable doubt that the error complained of did not contribute to the sentence obtained." Paz, 405 F.3d at 948 (internal quotation and marks omitted). On the other hand, in Mathenia, we determined that

> non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect. If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error.

Mathenia, No. 04-15250, manuscript op. at 5-6 (internal quotations and marks omitted).[2]

We further explained in Mathenia that "[t]he non-constitutional harmless error standard is not easy for the government to meet. It is as difficult for the government to meet that standard as it is for a defendant to meet the third-prong prejudice standard for plain error review." Id. at 6. Nevertheless, we concluded that the government had met this burden by citing to a statement by the district court that, if the Supreme Court determined that the federal guidelines were unconstitutional as mandatorily applied, the district court "nonetheless [would] consider the guidelines as—for their persuasive value or as advisory, and the

---

[2] Phrasing this test conversely, we also have explained that non-constitutional error is harmless unless it "resulted in actual prejudice because it had substantial and injurious effect or influence in determining the [result]." See United States v. Gallegos-Aguero, No. 04-14242, manuscript op. at 4 (11th Cir. May 18, 2005) (quoting United States v. Guzman, 167 F.3d 1350, 1353 (11th Cir. 1999)); see also United States v. Petho, No. 04-15412, manuscript op. at 3 (11th Cir. May 18, 2005) (same).

13

sentence [the court] would impose would be the same." Id. at 7. We, therefore, concluded in Mathenia that the government "demonstrated with fair assurance that the district court's error of applying the guidelines in a mandatory fashion did not affect, or had but a slight affect, on [the defendant's] ultimate sentence." Id. at 8.[3]

Because this case involves only a non-constitutional Booker error, we must apply the test discussed in Mathenia, instead of the "beyond a reasonable doubt" test discussed in Paz. The district court did not state that it would have imposed a lighter sentence, but for the mandatory nature of the federal guidelines. However, the court explained that it was following our instruction in Reese that it continue to apply the then-mandatory federal guidelines. The court, without objection, also sentenced Zorrilla at the bottom of his guideline range. But see United States v. Fields, No. 04-12486, manuscript op. at 8-10 (11th Cir. May 16, 2005) (concluding, under plain-error review, that the fact that the defendant was sentenced at the bottom his mandatory guideline range, without more, is insufficient evidence for the defendant to satisfy the prejudice prong).

---

[3] In reaching this conclusion in Mathenia, we cited to our decision in United States v. Robles, No. 04-13598, manuscript op at 8-10 (11th Cir. May 10, 2005), in which we concluded—under the more stringent harmless error test for constitutional Booker error—that the error was harmless where the court unequivocally stated that its sentence would be the same even if the federal guidelines only were advisory. See Mathenia, No. 04-15250, manuscript op. at 7-8.

14

Moreover, as the government concedes, unlike the facts in <u>Mathenia</u> and <u>Robles</u>, it cannot cite to evidence in the record showing that the court would have imposed an identical sentence if it had been proceeding under an advisory-guideline system. Because the record does not show "with fair assurance that the sentence was not substantially swayed by the error," we conclude that the government has not shown that Zorrilla's substantial rights were not violated, and, thus, it has not proven that the <u>Booker</u> error was harmless.[4]  <u>See</u> <u>Mathenia</u>, No. 04-15250, manuscript op. at 5-6; <u>see</u> <u>also</u> <u>United States v. Davis</u>, No. 04-14585, manuscript op. at 5-6 (11th Cir. May 4, 2005) (concluding that, despite the district court's grant of a motion for a downward departure for substantial assistance, pursuant to U.S.S.G. § 5K1.1, the government could not show that the court's mandatory application of the guidelines in sentencing the defendant was harmless, because the § 5K1.1 motion only gave the court limited discretion in considering the defendant's assistance). We, therefore, vacate and remand for resentencing consistent with the Supreme Court's decision in <u>Booker</u>.

**VACATED AND REMANDED.**

---

[4]The government concedes this point and agrees that the case should be remanded for resentencing. We appreciate the candor of government counsel.