NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2864
_____

UNITED STATES OF AMERICA

v.

ABEN MARRERO, JR., Appellant

_____

No. 14-2865
_____

UNITED STATES OF AMERICA

v.

MICHAEL SAMUELS, Appellant

_____

No. 14-2903
_____

UNITED STATES OF AMERICA

v.

LEAYLE BENJAMIN, Appellant

_____

On Appeal from the District Court
for the Virgin Islands
(D.C. Criminal Nos. 3-13-cr-00032-001, 002 & 003)
District Judge: Honorable Curtis V. Gomez

_____

ARGUED: May 20, 2015

Before: MCKEE, Chief Judge, SMITH, and SCIRICA, Circuit Judges

(Filed: March 11, 2016)

Darren John-Baptiste, Esq. [ARGUED]
Unit 3
2329 Commandant Gade
St. Thomas, VI  00802

    *Counsel for Appellant in No. 14-2864*

George H. Hodge, Jr., Esq. [ARGUED]
P.O. Box 803
Charlotte Amalie
St. Thomas, VI  00804

    *Counsel for Appellant in No. 14-2865*

Andrew L. Capdeville, Esq. [ARGUED]
Law Offices of Andrew L. Capdeville
8000 Nisky Center, Suite 201
P.O. Box 6576
St. Thomas, VI  00804

    *Counsel for Appellant in No. 14-2903*

Nelson L. Jones, Esq. [ARGUED]
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI  00802

    *Counsel for Appellee*

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

**SCIRICA**, *Circuit Judge.*

Leayle Benjamin, Aben Marrero, Jr., and Michael Samuels appeal the denial of their motions for acquittal and new trial. We will affirm.[1]

## I.

Thomas Bruce made two trips from St. Thomas, Virgin Islands, to Atlanta, Georgia, to deliver cocaine. The first culminated in Bruce's delivery of cocaine, the second ended with his arrest. Bruce subsequently pleaded guilty in a separate criminal action in Atlanta and was sentenced to 44 months' imprisonment. Turned government's witness in the separate trial of Benjamin, Marrero, and Samuels in the Virgin Islands, Bruce testified to a scheme in which Benjamin recruited him to deliver cocaine to Atlanta, Marrero told him how to acquire the drugs and paid for his airfare, and Samuels instructed him on who and where to deliver the cocaine to in Atlanta.

A federal jury in the Virgin Islands convicted Benjamin, Marrero, and Samuels of conspiracy to possess with intent to distribute cocaine (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846) and aiding and abetting possession of cocaine with intent to distribute (21 U.S.C. § 841(a)(1), 841(b)(1)(A)(ii); 18 U.S.C. § 2) on or about October 22, 2011. Benjamin and Marrero were acquitted of aiding and abetting possession with intent to distribute cocaine on or about July 2011.[2] Benjamin, Marrero, and Samuels now appeal the denial of their motions for relief under Federal Rules of Criminal Procedure 29 and 33.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] Samuel was not charged with aiding and abetting for this time period.

## II.

## A.

Benjamin and Samuels contend the government's failure to provide the transcript of Bruce's grand jury testimony at the close of his direct examination violated their Sixth Amendment rights and the Jencks Act, 18 U.S.C. § 3500. But we find no error because the transcript was available prior to Bruce's vigorous cross-examination by all three defense attorneys at the next day of trial.[3] *See United States v. Hart*, 526 F.2d 344, 344-45 (5th Cir. 1976); *see also* 29 Am. Jur. 2d Evidence § 1165 ("[T]he Confrontation Clause is generally not violated by the government's failure to produce Jencks Act material, where the accused confronts at the trial the witness whose statement is sought, has an opportunity to cross-examine him or her, and the accused does so." (citing cases)). The transcript was certified as a true and correct copy of Bruce's grand jury testimony, neither defendant contends Bruce's trial testimony was contrary to his grand jury testimony, and the evidence against each defendant was otherwise overwhelming. Accordingly, we see no error, as Benjamin and Samuels were not prejudiced and neither the Jencks Act nor their confrontation rights were not violated.[4]

---

[3] Bruce's direct examination occurred on October 1 and the transcript of his grand jury testimony was made available on October 2. Due to Samuel's dialysis, the next day of trial was not until October 3.

[4] Samuel also contends the court abused its discretion by denying his request to be sentenced to home confinement due to his physical impairment. Samuel's counsel has since conceded the issue, and we agree it is without merit. We lack jurisdiction to review a district court's refusal to grant a request for downward departure where the court was aware of its authority to grant the request. *E.g.*, *United States v. Isaac*, 655 F.3d 148, 158 (3d Cir. 2011); *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004). Here, the court was aware of its authority and explained on the record its reasons for not departing

**B.**

There was sufficient evidence to support Benjamin's and Marrero's conspiracy[5] and aiding and abetting[6] convictions. We will uphold a jury's verdict so long as, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Bruce testified to the following, which the jury was entitled to credit. Benjamin initiated Bruce's first trip by recruiting him to smuggle cocaine to Atlanta. BJA 316. Soon thereafter, Marrero provided Bruce with $1,000 to purchase his airline ticket, told him to purchase a carry-on suitcase, and instructed him that the drugs would be passed to him in the airport bathroom. BJA 317-18, 320. The day before the first trip, Bruce informed Marrero that he would be wearing white Timberlands so that he could be identified in the bathroom. BJA 326. Bruce subsequently received the cocaine, transported it to Atlanta in his carry-on suitcase, and was paid $9,000 by Marrero for making the trip. BJA 327.

Benjamin initiated Bruce's second trip by again recruiting him to smuggle cocaine to Atlanta. BJA 328. Bruce was not paid for this trip, but instead made it to reimburse

---

downward. SJA 95-98. "SJA" designates Samuel's joint appendix, "BJA" designates Benjamin's joint appendix, and "MJA" designates Marrero's joint appendix.

[5] "To prove a conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

[6] "In order to establish the offense of aiding and abetting, the Government must prove two elements: that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it." *United States v. Frorup*, 963 F.2d 41, 43 (3d Cir. 1992).

5

Benjamin for a prior loan. BJA 328. Marrero again provided Bruce with money to purchase his airline ticket. BJA 328-29. Bruce twice backed out of the trip because he felt something was not right. BJA 329-31. The first time he lost the value of his ticket and the second time he redeemed it for a voucher. BJA 329-31. When Bruce saw Benjamin the day after he lost the value of his ticket, Benjamin was angry but said it was only money. BJA 329. Marrero again provided Bruce with $1,000 to purchase a ticket. BJA 330. Bruce ultimately made the trip to Atlanta. BJA 331. On the day of his second trip, Benjamin alerted Bruce by telephone to proceed to the bathroom, but Bruce found the bathroom empty. BJA 332-33. Bruce exited the bathroom and walked down the corridor, where he passed Marrero. BJA 333-34. Bruce waited a minute and returned to the bathroom, where he found the handicap stall occupied. BJA 333-34. Cocaine was then passed to Bruce under the stall. BJA 334. Bruce subsequently transported the cocaine to Atlanta in his carry-on suitcase, but this time was immediately arrested upon his arrival. BJA 335.

Viewing this evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that Benjamin and Marrero conspired to smuggle cocaine to Atlanta and that they knowingly attempted to facilitate Bruce's possession with intent to distribute. Accordingly, the evidence against them was more than sufficient to sustain their conviction.

**C.**[7]

---

[7] "Normally we review a district court's denial of a motion for a new trial for abuse of discretion, but where the denial of the motion was based on the application of legal

Marrero contends the court erred by failing to dismiss the indictment, which he alleges was based on perjured testimony. An indictment cannot be dismissed on the basis of errors in grand jury proceedings absent a showing of prejudice. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988); *United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987). "[A]t least where dismissal is sought for nonconstitutional error," prejudice requires a showing that the violations "'substantially influenced the grand jury's decision to indict,' or [that] there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring in judgment)).

Agent Grossman testified before the first grand jury that Marrero entered the airport bathroom carrying a full bag and exited with an empty bag. Video footage shows this testimony was false. Nonetheless, Marrero cannot show prejudice because the government returned a superseding indictment, on which Marrero was actually tried. Significantly, Agent Grossman corrected the error before a second grand jury. Furthermore, Bruce's testimony as to Marrero's substantial involvement supported the second grand jury's indictment. Accordingly, the court did not err by not dismissing the indictment.

**D.**[8]

---

precepts we exercise plenary review." *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994).

[8] We review the District Court's ruling on the scope of cross-examination for abuse of discretion. *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991).

Benjamin sought to cross-examine Bruce on his sentence and the fact that he faced the possibility of a life sentence unless he cooperated with the government. BJA 360. But the court, citing Federal Rule of Evidence 403, prohibited Benjamin from cross-examining Bruce on the length of either the sentence he faced or the one he received. BJA 357-60. Instead, the court permitted defense counsel to use any descriptor to convey the severity of the sentence Bruce would have faced had he not cooperated. The court made clear that "the only thing [it] [was] precluding, [was] the mention of a specific sentence to which Mr. Bruce [was] exposed." BJA 360. Benjamin contends this limitation violated his Sixth Amendment confrontation right.

"[I]n determining whether a specific limitation violates a defendant's rights under the Confrontation Clause," we ask "(1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005). The proper inquiry under the first prong is "whether, if the trial court had not prohibited [the defendant] from cross-examining [the witnesses] with respect to the magnitude of the sentence reduction they believed they had earned or would earn, through their testimony, the jury might have received a significantly different impression of their credibility." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *United States v. Chandler*, 326 F.3d 210, 221 (3d Cir. 2003)).

Defense counsels' cross-examination revealed that Bruce had a strong motive to testify against Benjamin, as his cooperation substantially reduced the punishment he

faced. During cross-examination, Bruce conceded that by cooperating he expected to "receive a substantial reduction" in sentence, BJA 468, and "avoid a lot of jail time," BJA 466. He also acknowledged that he "desperately" wanted to receive the benefit of his plea deal with the government and that he would not receive it unless he provided the government with "substantial assistance." BJA 502, 505. Unlike in *Chandler*, the evidence showed that the magnitude of the benefit conferred upon Bruce in exchange for his cooperation was great,[9] *see* 326 F.3d at 222, and the District Court's latitude on the scope of cross-examination permitted defense counsel to use even stronger descriptors than those they elected to use. In addition, even though Bruce faced the possibility of a life sentence, what a defendant "*might* receive . . . lacks significant probative force because a defendant seldom receives the maximum penalty permissible under the statute of conviction." *United States v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007). Accordingly, because the evidence permitted the jury to appreciate the strength of Bruce's motive to provide satisfactory testimony for the prosecution, we cannot say that the jury might have received a significantly different impression of Bruce's credibility had it known Bruce faced the possibility of a life sentence had he not cooperated.

---

[9] In *Chandler*, the jury "learned only that [the cooperating witness] pled guilty to an offense carrying a sentence of between 12 and 18 months, that [the witness] could have been charged with a greater offense, and that [the witness] received only one month of house arrest, plus probation." 326 F.3d at 222. With only this information, the jury was not able to "appreciate the strength of [the witness's] incentive to provide testimony that was satisfactory to the prosecution," *id.*, because it lacked any information from which it could have appreciated the magnitude of the punishment the cooperating witness would have faced without cooperation, *id.*, be that through the use of adjectives to describe the gap in punishment or reference to the specific sentence faced. Here, by contrast, the court's instruction permitted defense counsel to provide the jury with information from which it could have appreciated the strength of Bruce's motive to testify.

**E.**[10]

**1.**

The trial court admitted a recording in which Benjamin discussed sending 45 kilograms of cocaine to Atlanta. The recording was made on October 18, 2011, one week before Bruce's second trip to Atlanta on behalf of Benjamin. Contrary to Benjamin's contention, Federal Rule of Evidence 404(b) is inapplicable because the recording discussed the delivery of cocaine between Benjamin, Bruce, and another party during the period of the conspiracy, and thus was intrinsic evidence and not evidence of prior bad acts. *See United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Nor did the recording violate Rule 403 because Benjamin's statement that he had just "sent 45" to his "people" in the Atlanta area, BJA 264, was highly probative of his involvement in the conspiracy and his intent to aid and abet in the transportation of cocaine to the mainland. We see no abuse of discretion.

**2.**

While being transported by FBI agents after his arrest, Benjamin spontaneously uttered "that he was wondering why it took [the authorities] so long to apprehend him" and that he "knew this was coming because of some incident that happened in Atlanta." BJA 740-41. Benjamin contends his statements were unfairly prejudicial and inadmissible under Rule 403. But we find them to be probative of consciousness of guilt

---

[10] "We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the context of Rule 403." *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001).

and to make it more likely that he was in fact involved in the charged conspiracy.[11] *See United States v. Webster*, 769 F.2d 487, 491-92 (8th Cir. 1985) (finding defendant's statement that he was surprised it took the authorities so long to find him to "show some consciousness of guilt"). We see no abuse of discretion.

## F.[12]

Benjamin contends the government failed to properly establish the chain of custody for the drug evidence admitted against him due to some unexplained markings on a log sheet and what he characterizes as a three-month gap of custody while the drugs were at the DEA office in Miami. Though "[s]erious gaps may render a chain of custody so deficient that exclusion is required, . . . in the ordinary case gaps in the chain go to the weight of the evidence, not its admissibility." *United States v. Rawlins*, 606 F.3d 73, 82-83 (3d Cir. 2010) (internal citations and quotation marks omitted). We find the markings on the log sheet to be the type of inconsistency that goes to the weight of the evidence, not its admissibility. In addition, there was no "actual evidence of tampering," *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998), or serious gaps in this case.

Witness testimony established the process by which the evidence was sent to the DEA for testing and was actually tested. Officer Todd Bailey testified that Bruce had the cocaine at the Atlanta airport, and that after Bruce's arrest he and the cocaine were taken to the airport office of Homeland Security Investigations (HSI). BJA 412-14. Agent

---

[11] Benjamin's statements were admissions of a party opponent and thus not hearsay. Fed. R. of Evid. 801(d)(2),

[12] We review the District Court's decision regarding the adequacy of a chain of custody for abuse of discretion. *United States v. Jackson*, 649 F.2d 967, 973 (3d Cir. 1981).

Jennifer Sutton testified that she took the seized cocaine from the HSI airport office and delivered it to the seized property custodian, Kevin DeGraaff. BJA 635-36. DeGraaff testified that he received nine kilograms of cocaine from Agent Sutton on October 23, 2011, and subsequently logged it and put it in an evidence safe. BJA 648-51. A couple of days later, DeGraaff sent the drugs via FedEx to the DEA lab in Miami. BJA 654-56. DeGraaff testified that the drugs were returned to the laboratory in December 2011. BJA 656-57. DEA forensic chemist, Tyrone Shire, identified the box containing the drugs using a unique identifying label and testified that it was in the same condition as when he sealed the drugs after analysis and that there was no evidence of tampering. BJA 379-82, 384-87.

Accordingly, we see no error, as the evidence was otherwise sufficient to establish that the cocaine presented at trial was in fact what was seized from Bruce at the Atlanta Airport. *See* Fed. R. Crim. P. 901(a).

## III.

For the foregoing reasons and those provided in the District Court's opinion, we will affirm the denial of Benjamin's, Marrero's, and Samuels's motions for acquittal and new trial and affirm the judgments of conviction and sentence.